[Civ. No. 7302. First Appellate District, Division One.—February 21, 1931.]

GEORGE O. MAKEIG, Respondent, v. UNITED SECURITY BANK AND TRUST COMPANY (a Corporation), Executor, etc., Appellant.

Keyes & Erskine for Appellant.

Kington & Cunningham for Respondent.

THE COURT.—The plaintiff recovered judgment against the defendant as executor of the last will and testament of the deceased wife for $10,384.54, and defendant appeals from the judgment and the order denying defendant's motion for a new trial.

Plaintiff and his deceased wife first met at Greenville, Mississippi, in the month of December, 1910, and afterward moved to California. Plaintiff is a barber by occupation, and the deceased wife, who had been a manicurist, became a saleswoman at a department store in San Francisco. They were married at Bakersfield, California, January 18, 1914, and were never divorced. The wife died June 8, 1928, leaving a will naming the defendant executor, and bequeathing the sum of $10 to her husband and the bulk of her estate to her brother. At the time of her death there was deposited in savings accounts in her name, to wit, Annette Netherland, in three separate banks the total sum of $10,001.64. In addition to this the sum of $194.36 in interest accrued and became due June 30, 1928. The defendant took possession of this total fund after its regular ap-

pointment as executor. The court found that $188.58 in interest became due on the above amount on December 30, 1928, and further found that the total of the above sums. was community property of the plaintiff and his deceased wife, and gave judgment for plaintiff on his complaint (which sought recovery of the whole fund on the theory that it was community property) and against the defendant for the aggregate of the said three sums, namely, $10,384.58. It is admitted and the court found that of the above amount $3,696.84 was acquired after August 17, 1923.

The finding that $188.58 interest became due December 30, 1928, respondent admits is not supported by the evidence. The record also shows clearly that at the time of the marriage the decedent had $83.54 on deposit at interest in one of her three savings accounts, and, so far as the record shows, this was never withdrawn prior to her death, and it appears to be a part of the total judgment.

In the period of fourteen and one-half years between the marriage of the parties and the wife's death they lived together for a period of about six weeks immediately following the marriage. Then by agreement the wife returned to San Francisco and to her work as a saleswoman in a department store there. In reply to a question as to when she next lived with him plaintiff replied, "We never did settle down." Three years later she visited for a week in El Paso; but as plaintiff did not have a steady job, and had been moving from place to place working as a barber three or four weeks in a place, the wife again returned to San Francisco. In December, 1917, plaintiff came to San Francisco and lived in one hotel while his wife lived in another. Plaintiff testified: "We did not live together in San Francisco. She lived in one hotel and I lived in another," but in reply to a question from the judge he testified that during that time they had marital relations. She came to plaintiff's room and he went to her room, but neither remained over night. Thereafter, and from 1918, plaintiff lived in Bay Point, California, off and on, being away about one year in Benicia. All of this time his wife continued to live in San Francisco and worked as a saleswoman in a department store from March, 1914, to December 31, 1926. She never lived with him at Bay Point, but during that time the record discloses the parties visited back and forth,

plaintiff sometimes meeting her in San Francisco, and several times she visited him at Bay Point over week ends, occupying the same room, and where she was introduced as his wife.

The parties corresponded. Several letters are in evidence covering the period from February 27, 1916, to June 1, 1928. Plaintiff testified he wrote once a week, and that sometimes she would not write to him for a period of two months.

After the marriage the record shows she earned about $14,000, and her total deposits during this time were about $9,000. Plaintiff testified that during all this time he sent her the greater part of his earnings, or from $75 to $100 per month, totaling from $12,000 to $15,000; that he kept no record; the amount was simply an estimate; that he never sent it by check or draft but only by currency just put in an envelope, and that they never discussed financial matters or what she was doing with the money; that he assumed she used it for living expenses, but never asked her.

The marriage status of the two was practically secret, except to three of plaintiff's friends at Bay Point. The wife's closest friends did not know of it. Plaintiff even addressed all his letters to her under her maiden name. He did not know any of her friends in San Francisco. Plaintiff's explanation of their status was that his wife liked San Francisco and they were trying to get money together for a home. As he testified: "It was always said, 'Well, just as soon as you can get some money together we will come together.' She was always talking every time I saw her when I was with her about saving money up—was making a home." Plaintiff also testified that his wife said, "it won't be long now before we will be able to go to housekeeping and get a home", and that their only understanding in regard to money was that as soon as they got money enough together they would make a home; that "Easter Sunday, 1928", was the last conversation he had with her about living together; that he had between three and four hundred dollars, which he considered sufficient for this purpose, but that he got crippled just after that and spent all his money on his legs, and that the only other property that he owned was the furniture in his barber-shop and the lease to the shop. His testimony was to the effect that he was to provide the

home, that they never did quarrel and their relationship was always friendly.

Respondent's wife went to a hospital about April 13, 1928, where she remained until her death, June 8, 1928. Defendant offered to prove that she did not believe her illness was serious, and hoped and expected to recover in a short time, and had definitely agreed with a lady friend of some years' standing that as soon as she was able she would give up her room in San Francisco and go and live permanently with her friend at Burlingame. The plaintiff objected that this evidence was hearsay, incompetent, irrelevant and immaterial, and the court sustained the objection.

Plaintiff contends that the bulk of said savings accounts was derived from the money he sent his wife. Defendant contends that said savings accounts were the accumulations of her own earnings from her steady employment, and made possible by her very frugal living as disclosed by the record.

The issues in the case are briefly these: Was the money so deposited in the respective banks at the time of the wife's death community property, or was it separate property as the earnings and accumulations of the wife while living separate and apart from her husband within the meaning of section 169 of the Civil Code?

If not separate property for this reason, was it separate property as a gift from the husband, or separate property by tacit or mutual agreement of the parties?

If it was community property, is the wife's executor entitled to retain possession of one-half of that portion thereof acquired after August 17, 1923?

Respondent claims, as there was not an actual rupture of the marital relations of the parties, and as the evidence does not show the separation was final, the parties cannot be said to have been living separate and apart.

In the case of *Humphrey* v. *Pope,* 122 Cal. 253 [54 Pac. 847], in construing section 370 of the Code of Civil Procedure, which authorizes a wife to sue alone "When she is living separate and apart from her husband by reason of his desertion of her", the Supreme Court quoted with approval *Tobin* v. *Galvin,* 49 Cal. 34, "that the words ' . . . living separate and apart from her husband' do not mean a temporary absence of the wife. There must have been an

abandonment on the part of the husband or wife, or a separation which was intended to be final''.

In the caes of *Union Oil Co.* v. *Stewart,* 158 Cal. 149, which involved the question of the right of the wife to acquire title to her husband's land by adverse possession, the court, in construing the provisions of section 169 of the Civil Code, said, at page 157, ''when a husband abandons and deserts his wife, remaining permanently separate from her, and at the same time delivers to her the possession of his land, she may claim title to it as her separate estate''.

In the case of *Loring* v. *Stuart,* 79 Cal. 200 [21 Pac. 651], it was held that where the wife lived in one city and the husband in another on account of domestic infelicity, which was never reconciled, and the husband testified he did not intend to return to her but never told her of his intentions, the Supreme Court held that the earnings of the wife while so living were her separate property within the meaning of section 169 of the Civil Code. (See *Finks* v. *Thompson,* 11 Tex. Civ. App. 538 [32 S. W. 711]; *Wright* v. *Bank, etc.,* 13 Ga. App. 347 [79 S. E. 184, at p. 186].)

In the case of *Spreckels* v. *Spreckels,* 116 Cal. 339 [58 Am. St. Rep. 170, 36 L. R. A. 497, 48 Pac. 228, 229], the Supreme Court said: ''If the wife is living separate and apart from her husband, through her own fault, her earnings and accumulations are her own.'' It is undoubtedly the law that no matter what the cause of the separation may be, if it is a separation in the legal sense the wife's accumulations are her own.

Living separate and apart, however, as contemplated by said section 169, does not apply to a case where a man and wife are residing temporarily in different places due to economic or social reasons, but applies to a condition where the spouses have come to a parting of the ways and have no present intention of resuming the marital relations and taking up life together under the same roof. Under modern conditions there is many a man living and working in one place and his wife living and working in another, seeing one another only on week ends, sometimes not for months at a time, yet they are not living separate and apart within the meaning of the section, for there has been no marital rupture, and there is a present intention to live together as man and wife, and their status is only temporary,

although it may happen that the condition might exist for some years.

In the light of the above decisions and the law we must approach this case to determine whether the decision is supported by the evidence.

Plaintiff's case rests almost exclusively on his own evidence.

■ What we have above set forth seems to support the inference that there had been no final rupture of the marital relationship. The parties to the marriage were and always had been quite friendly; and while, perhaps, the case is unique in the long and persistent separation of the spouses so far as their actual abode is concerned, such living apart seems to have been regarded by them as temporary and with the idea of ultimately establishing a common home. ■ It is true there was offered on behalf of the defendant the testimony of an intimate friend of the deceased that the latter had agreed with the witness to take up her abode with her if and when she left the hospital. Upon objection this evidence was excluded, and such exclusion is assigned as error. This evidence, being to some extent contradictory of that of the plaintiff, should have been admitted; but we think its rejection was not of sufficient prejudice to the defendant to warrant a reversal of the judgment. It related merely to the intention of the deceased to continue in the future to have a separate abode from that of her husband. It afforded a somewhat weak inference that she had always entertained such intention; but it could not overcome the positive testimony of the husband that up to that time it had been their mutual desire as soon as convenient to resume common habitation; and if such excluded testimony merely indicated the future intention of the deceased alone, it could not if admitted have changed the community status of the fund involved in the present proceeding, since it was all accumulated prior to the genesis of this intention of the deceased to make her permanent home with her friend, nor does it appear that such intention was ever disclosed to the husband.

■ Appellant contends that if the money in question was not separate property by reason of being the earnings of the wife, it was separate property as a gift from the husband or by tacit or mutual agreement of the parties.

There is no evidence whatever to sustain the contention that the money was separate property by tacit or mutual agreement of the parties; and so far as its being a gift from the husband is concerned, the husband testified that he never intended it as a gift, and there is no evidence in the record by which this court could hold it was a gift. (*Fanning* v. *Green*, 156 Cal. 279 [104 Pac. 308]; *Sprague* v. *Walton*, 145 Cal. 228 [78 Pac. 645].)

■ The judgment, however, must be modified. The record clearly shows that $83.54 of the amount was acquired by the wife before marriage, and with its accumulated interest thereon since 1912 of $61.15 at the rate allowed by the bank, or a total of $144.69, was the separate property of the wife. There was no evidence to support the finding that $188.58 interest became due December 30, 1928. ■ Moreover, conceding that all the money deposited since the marriage in the banks by the wife, with its accumulated interest, was community property, yet $3,696.84 of that amount was acquired subsequent to August 17, 1923, the effective date of the amendment to section 1401 of the Civil Code, making one-half of the community property subject to the testamentary disposition of the decedent. While section 1402 of said code provides that the possession and control of the community property shall not be transferred to the personal representative of the wife except to the extent necessary to carry the will into effect, in this case where only $10 is bequeathed to the husband and the entire balance to others, it is without question necessary for the personal representatives of the wife in this case to retain possession of the amount subject to her testamentary disposition in order to carry her will into effect, not only to pay her debts, but the costs, charges and expenses of administration as well as the legacies. This executor is entitled to retain possession of one-half of said sum of. $3,696.84, to wit, $1,848.42, although it may be community property (11 Cal. Jur. 1004; Code Civ. Proc., sec. 1452; *Page* v. *Tucker*, 54 Cal. 121).

The judgment must, therefore, be modified by deducting from the amount thereof the total of said sums of $144.69, $188.58 and $1848.42, namely, the sum of $2,181.69. It is so ordered, and as thus modified the judgment is affirmed, appellant to recover its costs of this appeal.