[Civ. No. 13877.   First Dist., Div. One.   Mar. 18, 1949.]

SOPHIA MELNY, Respondent, v. MATHEW MELNY, Appellant.

McGuire & Lahanier and F. B. Blum for Appellant.

Roger Anderson for Respondent.

PETERS, P. J.—Cross-actions for a divorce were filed by Sophia and Mat Melny. The trial court granted the wife an interlocutory decree of divorce, awarded her the custody of a minor child of the parties, found that all of the property described in the pleadings was community property, awarded the wife the home and furniture and $16,000 as her share of such property, and awarded her $205 per month alimony and $100 a month for the support of the minor child. The husband appeals.

No contention is or could be made on this appeal that the evidence is insufficient to support the findings and judgment granting the wife the divorce. The evidence shows that the parties were married in 1923, and separated in 1946; that they have three children, two of whom are over 21 and one of whom was 15 at the time of trial in 1947; that all during the marriage the husband has been guilty of many acts of extreme cruelty; that he was frequently drunk in and about the home, and, when drinking, was quarrelsome and abusive; that he frequently swore at his wife in the presence of their children and friends; that on occasions he struck his wife; that on two occasions the wife was hospitalized because of his abuse. The evidence also shows that at all times during the marriage the respondent has been a dutiful wife and a good and proper mother to the children.

The appellant makes three major contentions—(1) that the findings in reference to extreme cruelty are insufficient; (2) that as to two pieces of real property the trial court erroneously found they were community property; and (3) that the evidence is insufficient to show that appellant has the ability to pay the amounts awarded to respondent as alimony and support.

It is urged that the trial court failed to make a specific finding that respondent suffered grievous bodily injury or

grievous bodily suffering. The amended complaint of respondent charged: "That during the period of the marriage of the parties herein, defendant Mat Melny has been guilty of acts of extreme physical and mental cruelty toward plaintiff, which said cruelty has caused plaintiff great and grievous mental and physical pain and suffering, whereby the marriage is rendered intolerable to plaintiff." This allegation was followed by the specification that, on occasions too numerous to mention, appellant had struck respondent, cursed and swore at her, constantly humiliated her in the presence of third parties, been intoxicated and abusive toward respondent, addressed her and their children in an obscene manner, and denied her money except for bare necessities. The only specific date set forth in the amended complaint as to these charges is that appellant "in or about 1935 did break three ribs necessitating plaintiff to enter Lane Hospital for treatment."

The trial court found on this issue that "all the allegations contained in plaintiff and cross-defendant's amended complaint are true." This general finding is sufficient. Since 1939, when section 426b was added to the Code of Civil Procedure, it has not been necessary to make specific findings on cruelty. A general finding will suffice. (*LaMar* v. *LaMar*, 30 Cal.2d 898 [186 P.2d 678]; *Ungemach* v. *Ungemach*, 61 Cal. App.2d 29 [142 P.2d 99]; *Johnson* v. *Marr*, 8 Cal.App.2d 312 [47 P.2d 489].)

It is next urged that the trial court erroneously found that two parcels of the real properties involved are community property. These two parcels are referred to as the Novato property and the Van Ness Avenue property.

As to the Novato property, it appears that it stands of record in the name of Harry Melny, the son of the parties here involved. The trial court found: "That the store and lots located at Novato, California, . . . and standing in the name of Harry Melny is the community property of Sophia Melny and Mat Melny." This property was valued, by the trial court, at $6,500, and was awarded to the appellant.

The oldest daughter of the parties, Rosemarie, testified that in December, 1945, her father was confined to the hospital as a result of an automobile accident; that during this period she worked in the businesses then being conducted by him; that he instructed her to buy the Novato property; that he told her to prepare a check for his signature in the sum of $3,000 for a partial payment; that she prepared such a check and appellant signed it; that pursuant to his instructions she

took this check, plus $3,500 in cash from a safe in one of her father's stores, to the bank and secured a cashier's check for $6,500; that pursuant to his instructions she bought the property in question with this cashier's check and took title in her own name; that about a month later, pursuant to the directions of her father, she deeded the property to her brother, Harry. The appellant admitted that he had signed the $3,000 check and that the account upon which it was drawn was community property, but contended that he had instructed Rosemarie to buy the property for Harry. He admitted that he told Rosemarie that if she needed more money to take it out of the safe, but he testified that he had no idea how much she took from the safe. He further admitted that the entire purchase price for the property was paid for from his general community property funds, but he contends, and Harry likewise so testified, that Harry paid him back for the property. Apparently, however, even according to appellant, Harry paid him back but $3,000. The testimony on this subject is most confused and evasive. Appellant admits that neither he nor Harry ever kept a written account of such payments, testifying that he kept the amount of such payments in his head. Harry corroborated his father, but could not produce any written evidence of such claimed payments. Appellant testified that when his son joined the Navy, he, the father, had a few hundred dollars belonging to his son; that Harry sent him money while he was in the service; that after he got out of the service Harry worked for him and paid him about $125 a month in payment for the Novato property. The respondent and Rosemarie testified, however, that Harry had no money at all saved up when he went into the Navy, and sent home no money during his time in the service except in payment of a few prior loans. Harry was unable to produce any evidence, except his word and that of his father, that he had paid for the property, and was a most unsatisfactory, combative and evasive witness. Admittedly, the appellant operated a veterans' salvage shop on the Novato premises. He testified, however, that he pays his son $50 per month for the use of the Novato premises, although no written evidence of such payments was ever produced.

It is quite apparent that the finding that the property was community property of the parties, it having been purchased with community funds, is amply supported, if the issue was properly before the trial court. But, says appellant, the property stands in the name of Harry Melny, and Harry, although

a witness, was not made a party to this action. Under such circumstances, it is urged that the trial court was without jurisdiction to determine the character of the property. The appellant states his contention as follows: ''It is evident, without the citation of any authorities, that it is contrary to the very fundamentals of our system of justice that one, not a party to the action, should have his title to property adjudicated.''

The obvious answer to this contention, and it is one heretofore expressed by the courts, is that the judgment of the trial court, when and if it becomes final, is a binding adjudication only as to the rights of appellant and respondent in the property, and in no way affects the rights of Harry, if any, in the property. Of course, the trial court could make no adjudication that would be binding on Harry without making him a party to the proceeding. (*Towne* v. *Towne,* 6 Cal.App. 697 [92 P. 1050] ; *Moffitt* v. *Moffitt,* 128 Cal.App. 676 [18 P.2d 387].) It would have been much better practice for either the appellant or respondent, or the trial court, to have brought in Harry Melny as a party, and all rights in the property could then have been adjudicated. (*Elms* v. *Elms,* 4 Cal.2d 681 [52 P.2d 223] ; *Callnon* v. *Callnon,* 7 Cal. App.2d 676 [46 P.2d 988].) But Harry was not an indispensable party. The complaint alleged, and the answer denied, that the property in question was community. The trial court had jurisdiction as between the husband and wife to adjudge the character of any property claimed to be community. (*Scarpa* v. *Scarpa,* 40 Cal.App. 345 [180 P. 637].) The fact that a third party claimed an interest in the property is a false factor. (*Hiltscher* v. *Wagner,* 96 Cal.App. 66 [273 P. 590].) It is true that appellant may be adversely affected by the decree if it should ultimately be held in an action between appellant and his son that his son is the owner of the property, because the value of the Novato property was considered in dividing the community property and undoubtedly the value of this property influenced the court in determining the appellant's ability to pay alimony. But appellant has no one but himself to blame. He had it within his power to join his son as a party, but elected not to do so. He cannot now be heard to complain. (*Long* v. *Long,* 88 Cal.App.2d 544 [199 P.2d 47].)

Appellant next attacks the finding that the Van Ness Avenue property, valued by the trial court at $13,500, is community property, contending that the evidence shows that

it is his separate property. An examination of the lengthy record discloses that this was purely an evidentiary question, and that there is ample evidence to support the questioned finding.

The contention of appellant is built up around the following facts: Appellant was injured in the First World War and has received government disability benefits since that time. He was not married when he received the injuries. He contends, and respondent does not contend to the contrary, that all disability benefits received by him are his separate property. He testified that he always cashed the government checks and kept the cash so received in a separate compartment in his safe at his place of business. He further testified that he purchased the Van Ness Avenue property with these moneys. Title to this property was taken in his name, but both the husband and wife signed the deed of trust. The respondent positively testified that the $10,000 used to pay for this property came from the secondhand and salvage business operated by appellant. She was positive that bonus and pension moneys had not been used in its purchase, and accounted for the expenditure of such moneys in other ways. The records show that the property was purchased after marriage, and that $4,500 was paid as a down payment. The balance, secured by a deed of trust signed by both appellant and respondent, was to be paid off at the rate of $75 a month. It was actually paid off within six months of the date of purchase.

In addition to his own testimony, the appellant produced several of his employees who stated that they had overheard or participated in conversations in which both the husband and wife took part, in which the husband had stated that he was buying the Van Ness Avenue property with his pension money, and that the wife had acquiesced in these statements. The respondent denied participating in such conversations. She testified that, until the very time of trial, she had always believed the property was in both their names, and that when the property was purchased the appellant told her that ''We'' have bought the property and that she would have to go to the notary's office and sign the papers, which she did.

It is apparent that there is a direct conflict as to the source of the funds used to purchase this property. In addition, the property having been acquired after marriage, there is a strong presumption that it is community. (3 Cal.Jur. 10-Yr. Supp., p. 553, § 61.) Moreover, it is quite apparent from a reading of the transcript that the trial judge did not believe

appellant on this and the other issues involved, and that this implied finding was justified. Most of appellant's testimony was argumentative, unresponsive and evasive. Under such circumstances, the challenged finding must be held to be amply supported.

The last contention of appellant is also evidentiary in nature, it being contended that the evidence is insufficient to show that he has the ability to pay the amount of alimony and support money fixed by the trial court. If it be assumed that present ability to pay is an indispensable factor to be considered, nevertheless the evidence shows such ability. The total value of all community property was found by the trial court to be $50,000. The house and furniture valued at $9,000 were set aside to the wife. All the other properties, being business properties, were awarded the husband subject to his paying to his wife $16,000 within a reasonable time. Thus both parties were awarded $25,000, or half the community property, but the various businesses operated by appellant were awarded to him so as not to interfere with his earning power. In addition, appellant was ordered to pay to his wife $205 a month for her support and maintenance and $100 for the support of their 15-year-old daughter. Appellant contends that he cannot possibly pay the $16,000, plus $305 a month, and that the record so shows. The evidence shows that appellant operates three salvage stores in San Mateo, San Francisco and Novato, for the Disabled Veterans. He testified that from such stores he makes an income of about $200 a month, and that this was his sole income. It appears that the public donates to the veterans all of the goods sold in such salvage stores, and that appellant manages the stores. It also appears that, as to the San Mateo store, appellant pays the Disabled Veterans 5 per cent of his gross sales, and retains 95 per cent for himself. As to the Novato and San Francisco stores, he testified that he pays the Disabled Veterans $125 a month for the privilege of operating those stores and keeps the balance for himself, and for operating expenses. The Disabled Veterans also pay him a total of $195 rent for the three stores. No adequate books were produced to show his total income from these stores. Appellant's disability check now amounts to $82.50 monthly. He produced his income tax returns for 1942 through 1946 and they show, for those years, an average reported annual net income of about $2,500.

The trial court obviously disbelieved appellant as to the amount of his income, and the record shows that this disbelief

was well founded. Appellant testified that during the period when his income was but $200 a month he gave respondent $120 to $160 a month to run the house, and that, in addition, he bought most of the groceries and all of the important items of clothing. This would obviously have consumed most of his claimed $200 a month income. Prior to this time he had earned less money. Yet the record shows that during the past seven years appellant has paid out $10,000 in cash for the San Mateo property, $10,000 in cash for the Van Ness Avenue property and $6,500 in cash for the Novato property—a total of $26,500. During this period his net income at $200 a month would have been $16,800. No reasonable explanation of how or where he secured this money could be obtained from appellant. It is true that he testified that the Van Ness Avenue property was purchased with his bonus and disability money, but, for reasons already stated, the finding to the contrary is amply supported. Respondent testified that appellant's average income was at least $500 a month.

On this evidence the trial court, after fixing the amount of alimony and support payments, found that appellant ''is regularly employed and engaged in business and is financially well able to pay said sums aforementioned.'' When the proper rules of law are applied it is quite clear that the above-summarized evidence supports this finding. It must be remembered that this divorce was granted because of offenses against the marital relationship committed by the husband. It is he who has broken the marital contract. Section 139 of the Civil Code authorizes the trial court, in such cases, to compel the erring husband to contribute to the support of his wife and minor child. The respondent testified as to her needs, and they are certainly not exorbitant. ▆ The allowance of alimony rests within the discretion of the trial court, and the appellate courts will interfere only where there is an abuse of discretion. (*Wolff* v. *Wolff*, 102 Cal. 433 [36 P. 767, 1037]; *Baldwin* v. *Baldwin*, 28 Cal.2d 406 [170 P.2d 670]; *Bowman* v. *Bowman*, 29 Cal.2d 808 [178 P.2d 751, 170 A.L.R. 246].) The proper rule was thus expressed by this court in *Scheibe* v. *Scheibe*, 57 Cal.App.2d 336, 342 [134 P.2d 835]:

''As pointed out in some of the earlier decisions, . . . the award made under said section 139, properly speaking, is not alimony, nor is it merely a substitute for the wife's interest in the community or separate property of the husband. It is an allowance authorized to be made by way of compensation for a wrong done to the wife, and in that sense is regarded

as a penalty imposed upon the husband. ' "It proceeds upon the theory that the husband entered upon an obligation which, among other things, bound him to support the wife during the period of their joint lives, and gave to her a right to share in the fruits and accumulations of his skill; that by his own wrong he has forced her to sever the relation which enabled her to enforce this obligation, and for the wrong which thus deprived her of the benefit of the obligation, he must make her compensation. The court is to fix the measure of that compensation by 'having regard to the circumstances of the parties respectively'; those circumstances furnishing the best means for determining the extent of her loss. . . . This allowance may be entirely independent of the property then *in esse.*" ' (*Honey* v. *Honey*, [60 Cal.App. 759 (214 P. 250)] . . . ) The power to grant such an award is incidental to the determination of a divorce action, the same as is the right of a trial court to award the custody of children . . ., and the award may be made in the absence of allegations or evidence showing that the husband then owned either separate or community property to which resort may be had to enforce its payment, or that he has the ability to pay."

The judgment appealed from is affirmed.

Ward, J., and Bray, J., concurred.