[Civ. No. 51050. Second Dist., Div. Two. Sept. 19, 1977.]

In re the Marriage of BARBARA A. and RICHARD A. BARAGRY.
RICHARD A. BARAGRY, Respondent, v.
BARBARA A. BARAGRY, Appellant.

**COUNSEL**

Goux, Romasanta & Anderle and Thomas P. Anderle for Appellant.

Westwick & Collison, R. James Westwick, Brian H. Burke and Robert O. Angle for Respondent.

**OPINION**

**FLEMING, J.**—Wife appeals that part of the interlocutory judgment of dissolution which fixes the date of the parties' separation as 4 August 1971, the date husband moved out of the family home. She contends the

date should be 14 October 1975, the date husband filed his petition for dissolution, and, alternatively, that husband is estopped to contend the separation took place before 14 October 1975.

The facts are undisputed, and the issue is the legal conclusion that should flow from the facts. The parties were married in September 1956, and have two daughters, now 13 and 10. Husband is an eye physician and surgeon. After a quarrel with wife, husband moved out of the family residence on 4 August 1971 and stayed for a time on his boat. Thereafter he took an apartment, into which his 28-year-old girlfriend and employee, Karen Lucien, moved and in which both now live. Although not sleeping in the family residence, husband maintained continuous and frequent contacts with his family. He ate dinner at home with wife almost every night in 1971 and 1972 and thereafter ate at home at least three to five times a week. He maintained his mailing address at the home. In 1971 and 1972, he took wife and daughters to Yosemite and San Francisco. On Christmas Eve, 1971, he slept at home. Throughout 1972 and 1973, he took his family to all UCSB basketball games. In 1973, he went with his wife to Sun Valley for a week without the children. He frequently took wife to social occasions—parties at friends' homes, dinners for professional and academic groups, outings with other doctors and their wives. He sent wife numerous Christmas, birthday, and anniversary cards throughout the years 1971 to 1975, including a card stating, "I love you" in 1973, and an anniversary card with a huge box of flowers in September 1975. In 1974 he filed an enrollment card at their daughter's private school stating that she lived at home with both parents. The parties continued to file joint income tax returns, and husband maintained his voting registration at the home address. He paid all the household bills and supported his family. He regularly brought his laundry home to wife, who washed and ironed it twice a month.

The parties had no sexual relations after 4 August 1971. Wife knew husband was living with Karen but wife desired a reconciliation, and continued to hope husband would return. Husband did not tell her he was never coming back. Husband testified he took wife on outings in order to preserve social appearances and to keep in touch with his children, who otherwise would not come to see him. He delayed filing for divorce because his "solid mid-Western upbringing" made him reluctant to file for divorce. Both parties agree that their relationship was entirely amicable but nonsexual after August 1971 and that they maintained the habits and appearance of a married couple except that

husband slept with Karen. For four years husband maintained the facade of a marital relationship, but he now claims to have been legally separated from his wife. As proof he tenders his extra-marital activities.

■ What little law defines separation under Civil Code section 5118 holds that "living separate and apart" refers to "that condition when spouses have come to a parting of the ways with no present intention of resuming marital relations." (*In re Marriage of Imperato* (1975) 45 Cal.App.3d 432, 435-436 [119 Cal.Rptr. 590].) That husband and wife may live in separate residences is not determinative. (*Makeig* v. *United Security Bank & Trust Co.* (1931) 112 Cal.App. 138, 143 [296 P. 673]; *Tobin* v. *Galvin* (1874) 49 Cal. 34.) ■ The question is whether the parties' conduct evidences a complete and final break in the marital relationship. Here the only evidence of such a break is the absence of an active sexual relationship between the parties and husband's cohabitation elsewhere with a girlfriend. In our view such evidence is not tantamount to legal separation.

At bench the bone of contention is the community property character of husband's earnings from 1971 to 1975. To determine whether the conduct of the parties was such as to transmute the nature of that property from community to separate, we briefly recall the basic nature of the community property system. ■ Property acquired during a legal marriage is strongly presumed to be community property. (*Melny* v. *Melny* (1949) 90 Cal.App.2d 672, 677 [203 P.2d 588]; *Falk* v. *Falk* (1941) 48 Cal.App.2d 762, 767 [120 P.2d 714]; *Fountain* v. *Maxim* (1930) 210 Cal. 48, 51 [290 P. 576]; *Wilson* v. *Wilson* (1946) 76 Cal.App.2d 119, 126 [172 P.2d 568].) That presumption is fundamental to the community property system (*In re Duncan's Estate* (1937) 9 Cal.2d 207, 217 [70 P.2d 174]), and stems from Mexican-Spanish law which likens the marital community to a partnership. Each partner contributes services of value to the whole, and with certain limitations and exceptions both share equally in the profits. (*Stewart* v. *Stewart* (1926) 199 Cal. 318, 342-343 [249 P. 197].) So long as wife is contributing her special services to the marital community she is entitled to share in its growth and prosperity. (*In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 107 [113 Cal.Rptr. 58].) "Under the principles of community property law, the wife, by virtue of her position as wife, made to that value the same contribution as does a wife to any of the husband's earnings and accumulations during marriage. She is as much entitled to be recompensed for that contribution as if it were represented by the increased value of stock in a

family business." (Referring to valuation of goodwill.) (*Golden* v. *Golden* (1969) 270 Cal.App.2d 401, 405 [75 Cal.Rptr. 735].)

 At bench, husband was presumably enjoying a captain's paradise, savoring the best of two worlds, and capturing the benefits of both. Wife was furnishing all the normal wifely contributions to a marriage that husband was willing to accept and most of the services normally furnished in a 20-year-old marriage. Husband was reaping the advantages of those services and may be presumed to owe part of his professional success during that four-year period to wife's social and domestic efforts on his behalf. One who enjoys the benefit of a polygamous lifestyle must be prepared to accept its accompanying financial burdens. (*Marvin* v. *Marvin* (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106]; Civ. Code, § 3521.) During the period that spouses preserve the appearance of marriage, they both reap its benefits, and their earnings remain community property. To hold otherwise would be tantamount to saying that because husband slept on the living room couch for four years, or because he regularly slept elsewhere with another woman, wife can be deprived of her share in the household earnings.

 Because there is no sufficient evidence to rebut the presumptive status of a legal marriage continuing until 14 October 1975, the judgment is reversed, and the cause is remanded for further proceedings. Costs to wife.

Roth, P. J., and Beach, J., concurred.

A petition for a rehearing was denied October 14, 1977, and respondent's petition for a hearing by the Supreme Court was denied November 17, 1977.