[No. A041580. First Dist., Div. Two. Mar. 7, 1990.]

In re the Marriage of PATRICIA ANNE and JACK D. UMPHREY.
JACK D. UMPHREY, Appellant, v.
PATRICIA ANNE UMPHREY, Respondent.

COUNSEL

White & McMahon and Brien F. McMahon for Appellant.

Mary Catherine P. Farley for Respondent.

OPINION

**SMITH, J.**—Appellant Jack D. Umphrey (Husband) appeals from an order granting the motion of respondent Patricia Anne Umphrey (Wife) to vacate, on grounds of extrinsic fraud, a marital agreement and judgment of dissolution insofar as it determines the parties' property rights. On this appeal, we are asked to determine whether, on a motion in equity to set aside an uncontested judgment of dissolution, the party seeking to uphold the marital agreement may offer evidence proving a date of separation different from that recited in the settlement agreement in order to rebut an accusation of concealment of a community property asset. We hold that such evidence is admissible, and therefore reverse the order.

## BACKGROUND

Husband and Wife were married on June 24, 1950, and produced four children, the last of whom was born in 1962. On November 1, 1978, Wife wrote Husband a note telling him she had decided to end their relationship. At her request, Husband moved out of their Moraga residence. On November 17, 1978, Wife filed a petition to dissolve their marriage, although she dismissed it shortly thereafter at Husband's behest.

The declarations before the court were in conflict as to the date of separation. Wife claimed that after she dismissed the dissolution action, she considered their marriage to have resumed intact, that Husband was away from home for extended periods due to business commitments, and that although he maintained "temporary living quarters from time to time and place to place," his belongings remained at the family residence. Husband, on the other hand, maintained that he never resided or reconciled with Wife after November 1978. It is undisputed that in June 1979, Wife moved with their son to a townhouse in Foster City and wrote a note to Husband indicating that he should come and get his belongings. Additionally, in a letter written to Husband's lawyer in 1986, Wife stated that she "might as well sign [the proposed settlement agreement] . . . rather than go on with nothing at all as I have in the *past 8 years*." (Italics added.)

During their marriage the parties had acquired several condominiums, some in Husband's name and some in Wife's. After separation, each sold the condominiums in his or her name and kept the sale proceeds.

In late 1983 or early 1984 when Wife requested that Husband give her $35,000 to meet a balloon payment on the Foster City condominium, Husband expressed a desire to enter into an overall marital settlement. Husband thereafter instructed his attorney to draft a settlement agreement; the attorney forwarded a proposed agreement to Wife in September 1985. Following months of negotiation between Husband's attorney and Wife, who chose not to be represented by counsel,[1] a final agreement was executed by the parties in March of 1986.

The agreement recited that all community and quasi-community property had been disposed of by prior agreement; it confirmed certain real and personal property as Husband's separate property while awarding Wife certain bank and investment accounts, as well as personal property items. In addition, Husband agreed to pay Wife $1,000 per month in spousal support for 100 months. The agreement recited a separation date of "September, 1979." Husband stated that he and Wife mutually estimated the date as a "ballpark" figure and saw no need to investigate old records to determine the precise date. Wife stated that she never discussed a separation date with Husband, that she noticed the September 1979 date when she read it in the draft agreement and "accepted" it because she thought Husband had the legal right to choose the date.

---

[1] In a letter to Wife dated May 25, 1984, outlining Husband's proposal for an overall marital settlement, Husband's attorney wrote, "Naturally, you should feel free to talk to any lawyer you choose if you have any questions concerning your rights or anything contained herein."

The marital agreement was presented to and approved by the court in an uncontested proceeding and incorporated into a final judgment of dissolution. An amended final judgment was entered on October 17, 1986.

## PROCEDURAL HISTORY

On August 4, 1987, Wife moved to set aside the marital settlement agreement and the judgment insofar as it adjudicated the property rights of the parties. The basis of the motion was extrinsic fraud, to wit, Husband's nondisclosure of community property assets. Through the moving and opposing papers, it was disclosed that on September 17, 1979, Husband and the parties' son had entered into a lease of residential property in Hawaii rezoned for commercial use. In December 1979 they subleased the property, netting them an income of $250 per month. The lease had not been mentioned in the marital settlement agreement.

In opposition to the motion to vacate, Husband argued and offered evidence that the parties actually separated much earlier than the September 1979 date recited in the settlement agreement; that therefore the lease was his sole and separate property; and that in any event the failure to mention it in the agreement was inadvertent. Wife took the position that the separation date was in June 1980; she also urged as an independent basis for granting the motion that she placed her trust in Husband and his attorney, who had misled her about the character of the marital property and the nature of her right to spousal support.

At the hearing on the motion Judge Pfeiffer indicated that, from her reading of the declarations and moving papers, she believed the separation date was in fact earlier than that set forth in the agreement and on such basis she was inclined to deny the motion. However, she voiced her concern over "whether I have the ability or the jurisdiction in a motion to vacate to go behind the pleadings and look to the declarations . . . and make a finding other than that which is then [sic] set forth on the record already . . . ." The court requested that the parties brief the subject before making its ruling.

After briefs were filed, the court granted Wife's motion to vacate. In both the memorandum decision and the signed order, the court makes the specific finding "that this Court does not have jurisdiction to redetermine the date of the parties' separation and that [Husband] is estopped from arguing a separation date different from that as set forth in the Petition . . . ."

Husband subsequently filed a motion for reconsideration of the court's order and to reform the marital settlement agreement as it pertained to the separation date. The court denied the motion for reconsideration for failure to allege facts not previously set forth and dismissed the motion to reform as moot. Husband appeals both the order vacating the judgment and the order denying reconsideration.

APPEAL

*Equitable Relief*

Wife's motion to set aside the judgment was brought after the expiration of the six-month period allowed by Code of Civil Procedure section 473, which permits such relief based on mere "mistake, inadvertence, surprise or excusable neglect." ▮ "Once relief is no longer available under section 473, the public policy in favor of finality of judgments predominates, and the power to set aside valid final judgments and marital settlement agreements incorporated therein should be exercised only when exceptional circumstances require that the consequences of res judicata be denied." (*In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1071 [202 Cal.Rptr. 116] (*Stevenot*).)

The "exceptional circumstances" which are the only basis for overturning a judgment in equity are commonly referred to as extrinsic fraud or mistake. (*Kulchar* v. *Kulchar* (1969) 1 Cal.3d 467, 470-471 [82 Cal.Rptr. 489, 462 P.2d 17, 39 A.L.R.3d 1368].) Extrinsic fraud arises where a party has been denied a fair adversary hearing because he has been " 'deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense.' " (*Id.*, at p. 471.) Extrinsic mistake arises where a party, through excusable neglect, is prevented from having her day in court. (*Ibid.*)

▮ Courts have uniformly held that a deliberate concealment by one spouse of the existence of one or more community assets constitutes extrinsic fraud, justifying equitable relief. (*In re Marriage of Modnick* (1983) 33 Cal.3d 897, 905 [191 Cal.Rptr. 629, 663 P.2d 187]; *Stevenot, supra*, 154 Cal.App.3d at p. 1069; *Resnik* v. *Superior Court* (1986) 185 Cal.App.3d 634, 637 [230 Cal.Rptr. 1]; see Hogoboom & King, Cal. Practice Guide, Family Law (Rutter Group 1989) § 16:36.4, p. 16-16 (hereafter Hogoboom).) On the other hand, where a party has had the opportunity to protect herself from any mistake or fraud on the part of her adversary but unreasonably fails to do so, equitable relief is unavailable. (*In re Marriage of Melone* (1987) 193 Cal.App.3d 757, 762 [238 Cal.Rptr. 510].) Thus, one

spouse's misrepresentation of the value or character of property against which the other could have guarded will not be sufficient grounds to vacate a judgment. (*Stevenot, supra,* 154 Cal.App.3d at pp. 1070, 1073, fn. 6; *In re Marriage of Wipson* (1980) 113 Cal.App.3d 136, 142[169 Cal.Rptr. 664]; cf. *In re Marriage of Connolly* (1979) 23 Cal.3d 590, 598-600 [153 Cal.Rptr. 423, 591 P.2d 911].)

■ As the trial judge apparently recognized, with the possible exception of Husband's nondisclosure of the September 1979 lease, Wife's evidence did not establish extrinsic fraud or mistake. Wife's averments that she trusted Husband and his attorney to be fair, that she did not understand that she had a right to claim an interest in the properties which Husband represented were his, that she did not fully comprehend the nature of the support payments, and that she signed documents because Husband demanded it constituted merely intrinsic fraud or mistake attributable to a party who has failed to retain counsel and otherwise act diligently to protect her legal rights. (*Stevenot, supra,* 154 Cal.App.3d at pp. 1073-1075; Hogoboom, *op. cit. supra,* § 16:37.1, pp. 16-17 & 16-18.)

The key issues for the court to determine, therefore, were (1) whether the September 1979 lease was community property and (2) if so, whether Husband's nondisclosure of it constituted extrinsic fraud. In order to answer the first question, the court needed to determine the date of separation, since property acquired after that date belonged exclusively to Husband. (Civ. Code, § 5118.)

Despite an expressed reluctance to do so, the trial court concluded that it had no *jurisdiction* to consider a separation date different from the "September 1979" date recited in the previously filed pleadings and marital agreement. It also found that Husband was "estopped" from arguing a different date. The court erred on both counts.

### Jurisdiction

■ The court was incorrect in believing that it was jurisdictionally bound to accept the separation date recited in the agreement. The date was never adjudicated in any meaningful sense and it appears nowhere in the judgment itself. Nor does the written agreement carry the force of law behind it. Once a property settlement agreement has been incorporated into a judgment of dissolution, the agreement merges into and becomes superseded by the decree, and the value attaching to the document itself is only historical. (*In re Marriage of Jones* (1987) 195 Cal.App.3d 1097, 1104 [241

Cal.Rptr. 231]; *In re Marriage of Jacobs* (1982) 128 Cal.App.3d 273, 283 [180 Cal.Rptr. 234].)

■ All that aside, paramount to our determination of this issue is the fact that Wife's motion involved a direct invocation of the equity powers of the court—indeed, she sought to overturn a final judgment and marital settlement agreement nearly a year old. ■ "The first duty of equity is to be equitable." (*Estate of Hafner* (1986) 184 Cal.App.3d 1371, 1394 [229 Cal.Rptr. 676].) A court of equity is bound to consider substance over form (Civ. Code, § 3528; *County of San Mateo* v. *Consolidated Farms* (1959) 169 Cal.App.2d 735, 738 [337 P.2d 840]) and therefore may view the conduct of the parties rather than the terms of the written instrument in order to ascertain their true intent. (*McCafferty* v. *Gilbank* (1967) 249 Cal.App.2d 569, 575 [57 Cal.Rptr. 695].)

The threshold issue facing the court as an equitable tribunal was the separation date of the parties. ■ Separation, as used in Civil Code section 5118, "refers to 'that condition when spouses have come to a parting of the ways with no present intention of resuming marital relations'. . . . The question is whether the parties' conduct evidences a complete and final break in the marital relationship." (*In re Marriage of Baragry* (1977) 73 Cal.App.3d 444, 448 [140 Cal.Rptr. 779].) ■ In order to determine that issue, the court was not only entitled but duty bound to consider all of the relevant evidence. Recitations in the petition and the marital settlement agreement, while they may be considered as evidence on the subject, should not be regarded as conclusive.[2] In determining whether equitable intervention is appropriate, the court must take into account the entire picture in light of the evidence before it. The pleadings and settlement agreement constitute but one part of that picture. ■■■■ Consequently, the court below erred in deeming itself bound by the September 1979 date.[3]

---

[2] Our conclusion that there is nothing sacrosanct about a separation date recited in a settlement agreement recognizes not only the equitable nature of the proceedings, but the idiosyncrasies of human relationships. As this case illustrates, it is not uncommon for parties to a marriage gone sour to live their lives separate and apart while maintaining some vestiges of the marital relation. Many marriages are "on the rocks" for protracted periods of time and it may be many years before the spouses decide to formally dissolve their legal relationship. In such situations, separation dates can often be "guesstimates" or approximations selected at random or without careful consideration.

[3] As Husband correctly points out, even assuming the court could not consider a date other than "September, 1979," there is no rational explanation for its failure to determine whether the actual separation occurred before or after September *17,* 1979, which was the crucial date for determining whether the lease was a separate or community asset.

## Estoppel

The court also found that Husband was "estopped" to assert a separation date other than that shown in the agreement. ■ Like relief from extrinsic fraud, estoppel arises in the context of the court's exercise of its equitable powers. Estoppel will be enforced to prevent a person from asserting a right where his conduct or silence makes it unconscionable for him to assert it. (*In re Marriage of Stephenson* (1984) 162 Cal.App.3d 1057, 1072 [209 Cal.Rptr. 383]; *In re Marriage of Recknor* (1982) 138 Cal.App.3d 539, 546 [187 Cal.Rptr. 887, 34 A.L.R.4th 805].) The elements are a "representation or promise; made with knowledge of the facts; to a party ignorant of the truth; with the intent that the other party act on it; when the other party has, in fact been induced to rely on it." (*In re Marriage of Recknor, supra*, at p. 546.)

■ As applied here, nearly all of these prerequisites are missing. Even if the September 1979 date was selected by Husband and constituted a "promise or representation," Wife could not have been ignorant of the true state of facts, since she knew as much about the circumstances surrounding the separation as did Husband. Second, there was no evidence that the date was selected with an intent that Wife rely on it. To the contrary, if Husband had wanted to prevent Wife from asserting an interest in the lease, it would have been foolhardy for him to have chosen a separation date of September 1979. Finally, there was no actual reliance by Wife. She stated that she "accepted" the date because she assumed it was the one her husband had chosen as the date their marriage was over; she did not suggest that the date carried any special meaning to her or that it affected her decision to enter into the property agreement in any way.

■ The lower court's finding of estoppel also ignores the important principle that the doctrine acts defensively only; it can never be used as sword to gain unfair advantage by the one seeking to assert it. (*Estate of Hafner, supra*, 184 Cal.App.3d 1371, 1395; *Meyer* v. *Glenmoor Homes, Inc.* (1966) 246 Cal.App.2d 242, 267 [54 Cal.Rptr. 786]; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 132, p. 5351.) A court cannot, under the guise of equity, confer substantive rights on a party who otherwise has none. (*Stein* v. *Simpson* (1951) 37 Cal.2d 79, 83 [230 P.2d 816].) "Estoppel should be employed to prevent or mitigate injustice, not to create or aggravate it." (*Estate of Hafner, supra*, 184 Cal.App.3d at p. 1395.) As Justice Molinari has stated, "the estoppel doctrine is not properly invoked where its invocation is intended as an 'instrument of gain or profit. . . .'" (*Irving Tier Co.* v. *Griffin* (1966) 244 Cal.App.2d 852, 865 [53 Cal.Rptr. 469], citing *Little* v. *Union Oil Co.* (1925) 73 Cal.App. 612, 621 [238 P. 1066].)

If, as the trial court apparently believed, the actual separation date shown by the evidence was earlier than that recited in the pleadings, application of the doctrine in the manner employed below would have the effect of converting Husband's separate property into a community asset. This would allow one party to receive an unjust windfall in the name of equity—a result abhorrent to modern jurisprudence.

We conclude that there was neither a jurisdictional nor an equitable bar to the court's consideration of evidence bearing on the actual date of separation, irrespective of the recitations in the agreement or the petition.

### Remand

Wife's motion must be remanded to the trial court for a factual determination of whether the lease was a community asset, and if so, whether it was intentionally concealed. The court may decide these issues with or without the taking of additional evidence, at the court's discretion. If the court finds that the lease was acquired after the date of actual separation, there obviously has been no extrinsic fraud and Wife's motion must be denied. On the other hand, if the court finds that there has been intentional concealment, it may in its equitable power set aside the entire judgment and property division. (*Resnik* v. *Superior Court, supra,* 185 Cal.App.3d 634, 637; *In re Marriage of Modnick, supra,* 33 Cal.3d 897, 910.)

█ If the court finds the lease was community property but that its omission from the agreement was inadvertent, Wife's traditional remedy would be the filing of an independent action to adjudicate and divide her community interest therein. (*Stevenot, supra,* 154 Cal.App.3d at p. 1074; *Simon* v. *Simon* (1985) 165 Cal.App.3d 1044, 1048 [212 Cal.Rptr. 87]; *Henn* v. *Henn* (1980) 26 Cal.3d 323, 332 [161 Cal.Rptr. 502, 605 P.2d 10].) However, we note that effective January 1, 1990, new Civil Code section 4353 confers upon the court continuing jurisdiction to divide any subsequently discovered community asset upon a postjudgment motion or order to show cause in the same dissolution proceeding.[4] Inasmuch as this enactment constitutes only a procedural change in the law, it would be applicable

---

[4]The newly enacted section reads: "In any action for legal separation or dissolution or annulment of a marriage, the court has continuing jurisdiction to award community property or community debts to the parties that has not been previously awarded by a judgment therein. A party may file a postjudgment motion or order to show cause in the proceeding in order to obtain adjudication of any community asset omitted or not awarded by the judgment. In these cases, the court shall equally divide the omitted or unawarded community asset, unless the court finds upon good cause shown that the interests of justice require an unequal division of the asset." (Stats. 1989, ch. 1105, § 2, No. 11, West's Cal. Legis. Service, p. 3495; No. 6, Deering's Adv. Legis. Service, p. 3972.)

to pending actions. (*Lazelle* v. *Lovelady* (1985) 171 Cal.App.3d 34, 44 [217 Cal.Rptr. 145].) And since the new hearing on this motion after our remittitur will take place after the effective date of the statute, it appears the trial court will be authorized to proceed under Civil Code section 4353, if appropriate.

## DISPOSITION

The order vacating the judgment is reversed and the matter is remanded to the trial court to reconsider Wife's motion in a manner consistent with the views expressed herein. In light of this disposition, the appeal from the order denying Husband's motion for reconsideration is dismissed as moot. Husband shall recover costs on appeal.

Kline, P. J., and Benson, J., concurred.