[No. B074252. Second Dist., Div. Three. Mar. 21, 1994.]

In re the Marriage of JUDITH A. and ACHIM von der NUELL.
JUDITH A. von der NUELL, Appellant, v.
ACHIM von der NUELL, Respondent.

## COUNSEL

A. Marco Turk and George W. Cox for Appellant.

J. Thomas Gilbride for Respondent.

## OPINION

**KLEIN, P. J.**—Appellant Judith A. von der Nuell (wife) appeals an interlocutory judgment following a bifurcated trial in a marital dissolution proceeding.[1]

The issue presented is whether the trial court erred in holding the date of separation of the parties to be November 1, 1987, the date respondent Achim von der Nuell (husband) moved out of the family residence.

The critical inquiry in determining the date of separation is "whether the parties' *conduct* evidences a *complete and final break* in the marital relationship." (*In re Marriage of Baragry* (1977) 73 Cal.App.3d 444, 448 [140 Cal.Rptr. 779], italics added.) Therefore, even assuming on the date husband vacated the family home the parties had no " 'present intention of resuming marital relations' " (*ibid.*), their legal separation did not commence at that time. The parties attempted to reconcile, and it was not until some years later that their conduct evidenced a complete and final break in the marital relationship. The matter therefore is reversed and remanded.

### FACTUAL AND PROCEDURAL BACKGROUND

This case involves the dissolution of a marriage of nearly 28 years' duration. There were no minor children at the time of filing. The issue of the

---

[1]This court granted wife's motion to appeal the trial court's interlocutory decision on the issue of the date of separation. (Cal. Rules of Court, rule 1269.5(d).)

date of separation was bifurcated and tried separately from all other matters. Following a hearing at which wife testified and husband only submitted declarations, the trial court issued an extensive statement of decision which stated, inter alia:

The date of separation was November 1, 1987, when husband vacated the family home and the parties made a complete and final break in the marital relationship with no present intention of resuming marital relations. On that date, wife asked husband to move from the family residence because she believed he had been spending time with another woman. He complied. Around April 1988 and several times thereafter, husband asked wife for an agreement to return home. She refused and told him she did not want him to come home directly from the other woman's bedroom and that it was important he find a place of his own. In June 1988, husband left his female friend and moved into a separate residence, but never moved back into the family home. On July 13, 1989, husband filed a petition for dissolution which he never served on wife. Husband paid support, or paid a contribution to wife that would be considered support, until May 1991, in the amount of approximately $1,600 per month. Wife felt the marriage continued to be salvageable, or that things could be worked out to the point of saving the marriage. Wife sought the services of a marriage counselor and requested that husband participate in counselling but he refused. The parties discussed, and attempted reconciliation, until husband elected to take an early retirement from IBM in June 1991. When wife learned of husband's intent not to pay any further support, she filed the instant petition for dissolution. She decided to terminate the marriage after husband unilaterally accepted early retirement in June 1991. Wife could not recall specifically asking husband to return to the family residence between November 1, 1987, and June 1991. From early 1988 through the spring of 1991, the parties maintained joint checking accounts, credit cards, tax returns, and took title to an automobile jointly. Husband maintained close contact with wife including frequent visits to the home, taking wife on vacations, going out socially, and sending cards and gifts on special occasions and holidays. Also, husband continued having sexual relations with wife throughout the period between early 1988 and the spring of 1991.

Based on these factual findings, the trial court entered judgment on the bifurcated issue, holding the date of separation of the parties was November 1, 1987.

Wife appealed.

CONTENTIONS

Wife contends the trial court erred as a matter of law in finding the date of separation was November 1, 1987, because the undisputed evidence established there was no "complete and final break" in the marital relationship until September 12, 1991, when she made a final decision to terminate the marriage.

DISCUSSION

1.  *Separation does not commence until the parties' conduct evidences a "complete and final break" in the marital relationship.*

At issue is the community property character of husband's earnings and accumulations subsequent to November 1, 1987.

Civil Code former section 5118, which has been recodified as Family Code section 771 without change, provides: "The earnings and accumulations of a spouse . . . , while living separate and apart from the other spouse, are the separate property of the spouse." (Stats. 1992, ch. 162, § 10, operative Jan. 1, 1994.)

The "little law [which] defines separation under Civil Code [former] section 5118 holds that 'living separate and apart' refers to 'that condition when spouses have come to a parting of the ways with no present intention of resuming marital relations.'[2] [Citation.] That husband and wife may live in separate residences is not determinative. [Citations.] The question is whether the parties' conduct evidences a complete and final break in the marital relationship." (*In re Marriage of Baragry, supra,* 73 Cal.App.3d at p. 448, italics added; accord, *In re Marriage of Marsden* (1982) 130 Cal.App.3d 426, 434 [181 Cal.Rptr. 910].)

In considering whether the conduct of the parties was such as to transmute the nature of their property from community to separate, we also observe property acquired during a legal marriage is strongly presumed to be community property and that presumption is fundamental to the community property system. (*Estate of Duncan* (1937) 9 Cal.2d 207, 217 [70 P.2d 174]; *In re Marriage of Baragry, supra,* 73 Cal.App.3d at p. 448.)

In *Baragry,* ". . . husband moved out of the family residence and took an apartment with his girl friend. Husband ate frequently at the family

---

[2]In this context, "marital relations" is not synonymous with sexual relations. Rather, it denotes the broader marital relationship. (See *Makeig* v. *United Security Bk. & T. Co.* (1931) 112 Cal.App. 138, 143-144 [296 P. 673].)

residence and took his family on trips. Husband went with wife to Sun Valley for a week without the children. Husband attended social functions with wife and sent gifts and cards to her on holidays. The parties continued to file joint income tax returns, and husband maintained his voting registration at the family residence. This arrangement continued for four years, although remaining nonsexual. ([*In re Marriage of Baragry, supra*, 73 Cal.App.3d] at p. 447.)" (*In re Marriage of Marsden, supra*, 130 Cal.App.3d at p. 435.)

*Baragry* found the parties' conduct did not demonstrate "a complete and final break in the marital relationship. . . . [T]he only evidence of such a break is the absence of an active sexual relationship between the parties and husband's cohabitation elsewhere with a girlfriend." (*In re Marriage of Baragry, supra*, 73 Cal.App.3d at p. 448.) *Baragry* concluded "[i]n our view such evidence is not tantamount to legal separation." (*Ibid.*)

Similarly, in *Marsden* the parties' conduct did not give rise to a legal separation. There, ". . . wife moved out of the family residence in April of 1975 and filed a petition for dissolution. However, she took absolutely no further legal action for over three years. The parties continued their sexual relationship and attempted to resolve their marital differences with the aid of a marriage counselor. Husband joined wife in Mexico in the summer of 1975 and traveled with her to the Middle East in September and October of 1975. The parties spent Christmas together in 1975 in Mexico. They again traveled together in September of 1976. When husband returned from a trip in the first week of October of 1976, wife had moved back into the family residence." (*In re Marriage of Marsden, supra*, 130 Cal.App.3d at p. 435.)

*Marsden* upheld the trial court's determination the parties did not live separate and apart for the seven-year period between the date they were married in February 1971 and July 1978, when the wife removed her belongings from the family residence. (*In re Marriage of Marsden, supra*, 130 Cal.App.3d at pp. 433-435.) *Marsden* concluded the evidence concerning that period did not establish as a matter of law ". . . the parties had come to a parting of the ways with no present intention of resuming marital relations. Rather, the parties' conduct would appear to be an attempt to [e]ffect a reconciliation on an international scale and certainly does not reflect a complete and final break in the marital relationship." (*In re Marriage of Marsden, supra*, 130 Cal.App.3d at p. 435.)

From these decisions interpreting Civil Code former section 5118, we glean the principle that the critical inquiry is "whether the parties' *conduct* evidences a *complete and final break* in the marital relationship." (*In re*

*Marriage of Baragry, supra,* 73 Cal.App.3d at p. 448, italics added.) While *Baragry* also states ". . . 'living separate and apart' refers to 'that condition when spouses have come to a parting of the ways with no present intention of resuming marital relations' " (*ibid.*), that language must be read in conjunction with the prerequisite of a "complete and final break in the marital relationship" (*ibid.*) to commence the period of legal separation. This conclusion is consistent with the recognition that "[m]any marriages are 'on the rocks' for protracted periods of time and it may be many years before the spouses decide to formally dissolve their legal relationship." (*In re Marriage of Umphrey* (1990) 218 Cal.App.3d 647, 657, fn. 2 [267 Cal.Rptr. 218].)

In sum, because rifts between spouses may be followed by long periods of reconciliation, and the intentions of the parties may change from one day to the next, we construe *Baragry* to hold legal separation requires not only a parting of the ways with no present intention of resuming marital relations, but also, more importantly, *conduct* evidencing a *complete and final break* in the marital relationship.

Guided by these principles, we advert to the facts of the instant case.

2.  *Undisputed evidence establishes a complete and final break in the marital relationship did not occur on November 1, 1987.*

Because the essential facts are undisputed, ". . . the issue is one of law and the appellate court is free to reach its own legal conclusion from such facts [citations]." (*Toyota Motor Sales U.S.A., Inc.* v. *Superior Court* (1990) 220 Cal.App.3d 864, 872 [269 Cal.Rptr. 647].)

Although the trial court found the parties separated on November 1, 1987, because they had parted on that date "with no present intention of resuming marital relations," the record establishes a complete and final break in the marital relationship did not occur at that time. Therefore, the trial court's exclusive focus on the parties' present intention on November 1, 1987, was erroneous.

As indicated, until the spring of 1991, the parties maintained joint checking accounts, credit cards, and tax returns, and took title to an automobile jointly. Husband maintained close contact with wife including frequent visits to the home. He took wife on vacations, they went out socially, sent cards and gifts on special occasions and holidays, and continued having sexual relations with one another throughout the period between early 1988 and the spring of 1991. Husband continued to contribute financially to the community. Also, husband and wife attempted to reconcile until June 1991, when

wife decided to terminate the marriage after learning of husband's intent not to pay any further support to the marital community.

Given these ongoing economic, emotional, sexual and social ties between the parties and their attempts at reconciliation, regardless of the parties' present intention on November 1, 1987, a complete and final break in the marriage did not occur at that time.

Nonetheless, husband contends the marital partnership ended when cohabitation ceased in November 1987. He submits "[s]ince November 1987 Wife has been receiving support . . . without any matrimonial obligations (e.g. love, care, friendship); when that support was threatened Wife then determined that the marriage could not be saved. Now it is her desire . . . to reap all of the benefits of the four years in which she fulfilled none of her obligations as a wife."

Husband's argument flies in the face of record, which is replete with evidence that during those four years while living apart, the parties continued to function as an economic unit and retained social, sexual and emotional bonds.

In sum, there is no substantial evidence to support the trial court's conclusion the parties legally separated on November 1, 1987, making the trial court's ruling in that regard erroneous as a matter of law.

### DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings. The trial court is directed to determine the date of separation, guided by the principles set forth in this opinion.

Wife to recover costs on appeal.

Croskey, J., and Kitching, J., concurred.