[Civ. No. 9901. Third Dist. June 17, 1960.]

JOHN HUMPHREY KERR, Respondent, v. DOROTHY MARIE KERR, Appellant.

14

Herbert E. Paul for Appellant.

Robert R. Elledge for Respondent.

WARNE, J. pro tem.*—Defendant appeals from an interlocutory decree of divorce granted to her husband, the plaintiff, on the ground of extreme cruelty.

A review of the evidence discloses that the parties were married in Kansas City, Missouri, on December 27, 1927, and had three sons, all of whom were adults when this matter came to trial. In 1942 plaintiff suffered a nervous breakdown. As a result he spent a considerable amount of time thereafter in hospitals, was never again employed in his principal occupation of teaching, and worked only intermittently at other temporary jobs. In November of 1950 he was committed to Stockton State Hospital, where he was confined, except for a few weekend leaves, until January 17, 1953, when he walked

*Assigned by Chairman of Judicial Council.

out of the hospital without permission and went to New Mexico. He did not return to his family home in Modesto until January 1, 1956, at which time the defendant refused to allow him to stay there.

On June 21, 1956, appellant went to Nevada, where she remained until September 4, 1956. On August 31, 1956, she obtained a Nevada decree of divorce from respondent, and on September 1, 1956, she purported to marry one William H. Kessler. Appellant and respondent have not cohabited since 1950, except during respondent's leaves while in Stockton State Hospital.

Appellant's contentions are largely attacks upon the sufficiency of the evidence. Therefore in determining whether the evidence is sufficient we must view it in the light most favorable to respondent. (*Rudolph* v. *Tubbs,* 46 Cal.2d 55 [291 P.2d 913].)

Her first contention is that the trial court erred in deciding that the Nevada divorce had no validity in California. The validity of that divorce, under the facts of the case, turns upon whether or not appellant intended to make her domicile in Nevada when she went there in 1956. If she intended her domicile to remain in California, as her husband concededly did, the Nevada divorce has no force or effect in this state. (Civ. Code, § 150.1.) Appellant admits that there is prima facie evidence that she was domiciled in California at the time divorce proceedings were commenced in Nevada by virtue of section 150.2 of the Civil Code, which provides:

"Proof that a person hereafter obtaining a divorce from the bonds of matrimony in another jurisdiction was (a) domiciled in this State within twelve months prior to the commencement of the proceeding therefor, and resumed residence in this State within eighteen months after the date of his departure therefrom, or (b) at all times after his departure from this State and until his return maintained a place of residence within this State, shall be prima facie evidence that the person was domiciled in this State when the divorce proceeding was commenced."

Appellant contends, however, that the evidence established her unequivocal intention to become a domiciliary of Nevada. While she testified that she went to Nevada with the intention of staying there and making it her permanent home, there are facts and circumstances connected therewith which amply support the trial court's implied finding that she never really intended to make Nevada her home, but that she went there

with the intention of getting a divorce. The record shows that when defendant arrived in Nevada she enrolled in a summer session at the University of Nevada. She gave 119 Needham Avenue, Modesto, California, as her permanent address during the time she was there. She is a school teacher with tenure. She had a contract to teach in Modesto before she left and she returned to carry it out. She retained her Modesto telephone on vacation rates. She left her furniture and practically all of her clothing in Modesto. She gave no evidence of having sought employment in Nevada. She rented an apartment for the period of the summer university session only. She did not register her automobile nor did she register for the purpose of voting in Nevada; and she sought no driver's license there. While in Nevada she applied for a Nevada decree of divorce and received the decree, as heretofore stated, on August 31, 1956. She married her present husband on the following day and returned to Modesto on September 4, 1956, where she has resided ever since.

In *Crouch v. Crouch*, 28 Cal.2d 243, 250-251 [169 P.2d 897], the court said: ''. . . [I]t is always competent to collaterally impeach a decree of divorce rendered in another state by extrinsic evidence showing that the court pronouncing it did not have jurisdiction either of the parties or the subject matter. Thus the decree may always be attacked upon the ground that the foreign court had no jurisdiction because the petitioning party had not established a bona fide domicil. [Citing many cases.] A decree based upon either personal or constructive service or even a personal appearance may be attacked upon this ground. [Citing cases.]

''Section 1916 of the Code of Civil Procedure provides: 'Any judicial record may be impeached by evidence of a want of jurisdiction in the court or judicial officer, of collusion between the parties, or of fraud in the party offering the record, in respect to the proceedings.' Civil Code, section 90, provides: 'Marriage is dissolved only: One—By the death of one of the parties; or, Two—By the judgment of a court of competent jurisdiction decreeing a divorce of the parties.' In view of these code provisions, once it is established that the court of a sister state or foreign country was without jurisdiction to render a valid decree of divorce, the courts of this state are precluded from recognizing as valid a dissolution of marriage based upon such a judgment. [Citing cases.]''

Appellant next contends that the trial court's finding that the parties separated on January 1, 1956, has no support

in the evidence. She contends that the evidence undisputedly fixed the date of separation as of January 17, 1953, the date on which respondent fled from Stockton State Hospital and went to New Mexico. To the contrary, the evidence shows that shortly after respondent departed from the hospital he sent appellant a valentine, and that after he arrived in New Mexico, he opened a bank account on which he placed not only his Modesto address but also his wife's name. Moreover, he corresponded with appellant, he asked her to join him in New Mexico, and he filed joint tax returns with her. Furthermore, appellant admitted at the trial that respondent's purpose in leaving California was probably to avoid incarceration in the hospital. Further, respondent testified that he never intended to separate from his wife, until he returned home on January 1, 1956, and she refused to allow him to stay there. These facts amply support the trial court's finding that the separation occurred on January 1, 1956.

 Appellant challenges the court's division of the property, particularly its order awarding the entire Stanislaus-Merced Savings and Loan Association account to respondent. This account amounted to $7,045.14 and was opened on July 11, 1955, with an original deposit of $800. Of this original amount $555.92 came from appellant's savings account in the American Trust Company, opened in April, 1949, and the balance from a Bank of America account originally opened in the names of both parties and containing the common funds of both. Two additional deposits in the Stanislaus-Merced Savings and Loan account were attributable to the proceeds of government bonds held in the names of both parties, one in the amount of $3,202.14, the other in the amount of $2,011.72. Appellant testified that in February of 1958, she added $400 to this account. The balance of the account consists of interest and deposits of uncertain source. The two deposits attributable to proceeds from the government bonds are not claimed by either party to be anything other than community property. However, appellant contends that a considerable portion of this account was not community property, presumably because it came from appellant's earnings while the parties were living separate and apart within the meaning of section 169 of the Civil Code. In *Makeig* v. *United Security Bank & Trust Co.*, 112 Cal.App. 138, 143 [296 P. 673], the court said:

"Living separate and apart, however, as contemplated by said section 169, does not apply to a case where a man and

wife are residing temporarily in different places due to economic or social reasons, but applies to a condition where the spouses have come to a parting of the ways and have no present intention of resuming the marital relations and taking up life together under the same roof. Under modern conditions there is many a man living and working in one place and his wife living and working in another, seeing one another only on week ends, sometimes not for months at a time, yet they are not living separate and apart within the meaning of the section, so there has been no marital rupture, and there is a present intention to live together as man and wife, and their status is only temporary, although it may happen that the condition might exist for some years.''

In the light of that decision (with the exception of the $400 deposit above mentioned) it may not be said that the trial court erred in holding that the account in question was community in character. As to the $400, there is no question but that it is the wife's separate property and should have been awarded to her. In the instant case the evidence shows that there was no parting of the ways nor an intention not to resume marital relations and take up life together under the same roof until January 1, 1956, when appellant refused to permit respondent's return to their home. It is clear that respondent left for New Mexico because of his fear of being reincarcerated in the Stockton State Hospital. That did not mean that he was running away from his wife. Further, as heretofore noted, the parties corresponded with each other. Appellant even sent him money and visited him in New Mexico on an occasion when respondent was sick. Respondent testified that it was his intention at all times to return to his wife; hence section 169 of the Civil Code is not applicable except as to the $400 deposit above mentioned.

Finally, appellant contends that the trial court abused its discretion in ordering her to pay respondent's attorney's fees, and in ordering her to pay respondent $65 per month for support, for the following reasons: ''(a) There was no showing of present need; (b) There was no showing that plaintiff could not have augmented his income from other sources; (c) Plaintiff did not reveal to the Court the full extent of his property.'' We do not believe that there is merit in these contentions. The right to support is governed by section 139 of the Civil Code. That section, in part, provides as follows:

''In any interlocutory or final decree of divorce . . . , the court may compel the party against whom the decree or judg-

ment is granted to make such suitable allowance for support and maintenance of the other party for his or her life, or for such shorter period as the court may deem just, having regard for the circumstances of the respective parties, . . ."

It is to be noted that absolute necessity is not a test. Moreover, section 137.3 of the Civil Code, referring to awards of attorney's fees and costs refers only to such amounts as may be "reasonably necessary." The award of support and maintenance to the husband is a matter of discretion of the trial court and it must be upheld unless there is no substantial evidence to support it, or in other words, that there is a clear abuse of discretion. (*Horton* v. *Horton*, 18 Cal.2d 579, 583 [116 P.2d 605].) And in *Wright* v. *Wright*, 148 Cal.App.2d 257, 270 [206 P.2d 536], the court said:

". . . 'The law is settled in California that when the wife is the owner of a nonincome producing property she is not required to have recourse to such property for her support before seeking support from her husband.' [Citing two cases.] Substantially the same thing may be said about the allowance of attorney's fees, as has been said about the support for the wife. [Citing cases.]"

These same rules apply either to the husband or the wife, as the case may be, under the provisions of section 139 of the Civil Code. In the instant case appellant has a permanent job, with assured retirement pay and is earning $6,405 per annum, and as found by the trial court, "defendant is able to support her husband to the extent that he can be maintained in a suitable home and his ordinary medical expenses taken care of; that the defendant is able to pay plaintiff's attorney's fees and costs of Court, including services rendered on the contested divorce trial and on an order to show cause proceeding."

On the other hand, respondent's only means of support, in addition to such money as he might have been able to save and deposit in banks, is his veteran's benefits in the amount of $66.15 per month. Under such circumstances, we feel that the trial court did not abuse its discretion in making said award. There is no merit in appellant's final contention.

We conclude that the $400 deposit in the Stanislaus-Merced Savings and Loan account which defendant made after January 1, 1956, is the separate property of the defendant. To that extent the judgment is modified and as so modified the judgment is affirmed, respondent, however, to recover costs on appeal.

Van Dyke, P. J., and Schottky, J., concurred.