[No. G012938. Fourth Dist., Div. Three. Sept. 20, 1995.]

In re the Marriage of DORIS E. and VICTOR K. HARDIN.
DORIS E. HARDIN, Appellant, v.
VICTOR K. HARDIN, Respondent.

**COUNSEL**

Steven E. Briggs for Appellant.

E. Robert Lemkin and Kevin G. Musulas for Respondent.

OPINION

**SONENSHINE, Acting P. J.—**

I

Doris and Victor Hardin married in 1961. On June 28, 1969, Victor walked out of their apartment and although he and Doris continued their economic relationship, saw each other often, and communicated regularly, they eventually dissolved their marriage.

None of the above is so unusual. Many couples experiencing marital problems stop living in the same residence but nevertheless maintain financial ties and a cordial relationship until they finally go forward with the dissolution. What makes this situation unique is the time frames of these events. Specifically, 14 years transpired between Victor's exiting the family residence and dissolution of the marriage. And even then the matter was not entirely concluded. Although the parties dissolved their marriage in 1983, they neither divided their property nor established support obligations. Indeed, those matters are *still* pending. However, progress is being made. In 1991, Doris and Victor, wishing to finally resolve the remaining issues, agreed the court should determine their date of separation.[1]

At the hearing, Doris contended they separated in 1983 when Victor, wishing to remarry, went forward with the dissolution. The trial court, however, agreed with Victor who argued the date of separation occurred on June 28, 1969, when he moved out of their residence. Doris appeals.

II

Doris makes several arguments but the thrust of her appeal is the trial judge, by relying on an objective test, misconstrued the standard for determining the date of separation. Specifically, Doris refers to the judge's statement he was disregarding his own finding that Victor had "not made up [his mind] regarding a divorce until 1982 or 1983" because he concluded the appropriate standard was: " 'Would society at large deem the couple to be separated based upon the facts and based upon the evidence [presented]?' " For reasons we now explain, the trial court erred.

III

In many dissolution proceedings, the date of separation is a critical fact affecting the parties' rights to property and income. Nevertheless, the Legislature has neither defined "date of separation" nor specified a standard for

---

[1]The court certified the issue for appeal and we agreed to hear it.

determining it. The only statutory reference to this term is found in Family Code section 771[2] which provides: "The earnings and accumulations of a spouse . . . while living separate and apart from the other spouse, are the separate property of the spouse."

Since the Legislature has failed to provide guidance, we look to case law defining the date of separation. In *Makeig v. United Security Bk. & T. Co.* (1931) 112 Cal.App. 138, 143 [296 P. 673], the court held living separate and apart is a "condition where the spouses have come *to a parting of the ways and have no present intention of resuming the marital relations and taking up life together under the same roof.*" (Italics added; see also *Kerr v. Kerr* (1960) 182 Cal.App.2d 12, 18 [5 Cal.Rptr. 630].) This definition was further amplified in *In re Marriage of Baragry* (1977) 73 Cal.App.3d 444, 448 [140 Cal.Rptr. 779]: "The question is whether the *parties' conduct evidences a complete and final break in the marital relationship.*" (Italics added; see also *In re Marriage of Marsden* (1982) 130 Cal.App.3d 426, 434 [181 Cal.Rptr. 910] and *In re Marriage of Umphrey* (1990) 218 Cal.App.3d 647, 657 [267 Cal.Rptr. 218] [where the courts reiterated the *Makeig* and *Baragry* definitions].)

In *In re Marriage of von der Nuell* (1994) 23 Cal.App.4th 730 [28 Cal.Rptr.2d 447], the court combined the *Makeig* and *Baragry* definitions. "[B]ecause rifts between spouses may be followed by long periods of reconciliation, and the intentions of the parties may change from one day to the next, we construe *Baragry* to hold *legal separation requires not only a parting of the ways with no present intention of resuming marital relations, but also, more importantly, conduct evidencing a complete and final break in the marital relationship.*" (*In re Marriage of von der Nuell, supra,* at p. 736, original italics and italics added.)

Simply stated, the date of separation occurs when either of the parties *does not* intend to resume the marriage *and* his or her actions bespeak the finality of the marital relationship. There must be problems that have so impaired the marriage relationship that the legitimate objects of matrimony have been destroyed and there is no reasonable possibility of eliminating, correcting or resolving these problems. (See Cal. Law Revision Com. com., 29C West's Ann. Fam. Code (1994 ed.) § 2310, p. 598; § 2334, subd. (a).)

IV

The courts have neither defined the standard to be employed nor the factors to be considered in determining the date of separation. Nevertheless,

---

[2] All further statutory references are to the Family Code.

the answers are implicitly contained within the cases. All factors bearing on either party's intentions "to return or not to return to the other spouse" are to be considered. (*Dalton* v. *Metropolitan Property & Liability Ins. Co.* (1982) 136 Cal.App.3d 1037, 1041 [186 Cal.Rptr. 685].) No particular facts are per se determinative. The ultimate test is the parties' subjective intent and all evidence relating to it is to be objectively considered by the court.

Several cases illustrate this concept. In *Makeig* v. *United Security Bk. & T. Co.*, *supra*, 112 Cal.App. 138, the parties told only a few of husband's friends they had married, resided in the same home for just six weeks and then maintained separate residences for fourteen years until husband's death. Nevertheless, the court concluded they had never separated because there was no evidence they considered dissolving the marriage.

Also instructive is *In re Marriage of Baragry*, *supra*, 73 Cal.App.3d 444, which reversed a trial court finding the parties separated when husband moved out of the family home to live with his girlfriend on his boat. The court looked to the parties' continuous and frequent contacts and the husband's intentions as expressed in cards sent to his wife. Moreover, the filing of joint tax returns, and husband's other written acknowledgements that he resided at the family residence convinced the court a complete and final break in the marital relationship did not occur until husband filed the petition to dissolve four years after he moved out. The court discounted the significance of the absence of a sexual relationship between the parties and husband's cohabitation with his girlfriend as "evidence [which is not] tantamount to legal separation." (*In re Marriage of Baragry*, *supra*, 73 Cal.App.3d at p. 448.)

Courts have concluded the filing of a dissolution petition or recitations in a marital settlement agreement do not by themselves compel a finding the parties were thereafter living separate and apart. (*In re Marriage of Marsden*, *supra*, 130 Cal.App.3d 426, 435; *In re Marriage of Umphrey*, *supra*, 218 Cal.App.3d 647, 657.) As the court observed in *Umphrey*, "Our conclusion that there is nothing sacrosanct about a separation date recited in a settlement agreement recognizes not only the equitable nature of the proceedings, but the idiosyncrasies of human relationships. As this case illustrates, *it is not uncommon for parties to a marriage gone sour to live their lives separate and apart while maintaining some vestiges of the marital relation. Many marriages are 'on the rocks' for protracted periods of time and it may be many years before the spouses decide to formally dissolve their legal relationship.* In such situations, separation dates can often be 'guesstimates' or approximations selected at random or without careful consideration." (218 Cal.App.3d at p. 657, fn. 2, italics added.)

Finally as noted in *In re Marriage of von der Nuell, supra,* 23 Cal.App.4th 730, the date of separation is determined by more than when a party leaves the family residence or files a dissolution petition. The length of time voluntary support is paid and the "ongoing economic, emotional, sexual and social ties between the parties and their attempts at reconciliation [also indicates when] a complete and final break . . . occur[s] . . . ." (*Id.* at p. 737.)

Applying the above principles here the trial court's error is clear. The *ultimate question to be decided in determining the date of separation is whether either or both of the parties perceived the rift in their relationship as final.* The best evidence of this is *their words and actions.* ▉ The husband's and the wife's subjective intents are to be objectively determined from all of the evidence reflecting the parties' words and actions during the disputed time in order to ascertain when during that period the rift in the parties' relationship was final.[3]

## V

The effect of the trial court's error in relying only on certain evidence in making its determination is pervasive, resulting in its exclusion of what it considered to be subjective evidence. As indicated by the court's statement of decision and its response to Victor's objections, the court failed to make factual findings necessary to a resolution of disputed material issues. The court also did not consider certain undisputed evidence. The result is a Code of Civil Procedure section 632 statement of decision which is inadequate as a matter of law. (*McCurter* v. *Older* (1985) 173 Cal.App.3d 582, 593 [219 Cal.Rptr. 104]; *In re Marriage of Ananeh-Firempong* (1990) 219 Cal.App.3d 272 [268 Cal.Rptr. 83].)[4]

Because the matter must be remanded for further consideration of the date of separation, we review the evidence the trial court did and did not consider.

The court relied on the following facts in determining the date of separation: (1) the date Victor moved out of the family residence; (2) he never

---

[3]"Whether the parties are '*living separate and apart*' . . . turns on *their subjective intent as evidenced by their concuct.*" (Hogoboom & King, Cal. Practice Guide: Family Law 1 (The Rutter Group 1995) ¶ 8:111, p. 8-27, original italics.) Another respected family law authority notes the "standard appears to require an objective test; Would society at large consider the couple separated?" (Cal.Fam.L.Rep. (Oct. 1994) § D.92.) As explained, these are not conflicting statements.

[4]Doris requested a statement of decision, filed objections to Victor's and filed her own. She adequately preserved this issue. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130 [275 Cal.Rptr. 797, 800 P.2d 1227].)

The court did not respond to some of Doris's requests and objections. The court concluded some issues were not before it or would require it to engage in conjecture and speculation.

moved back; (3) the move followed a heated argument; (4) the parties previously had a number of other arguments; (5) Victor never again slept at the house; (6) the parties thereafter dated other people; (7) the parties thereafter did not attend business, social or family events together; and (8) Doris filed three different petitions for dissolution of marriage, always specifying June 28, 1969, as the date of separation.

These are relevant considerations but, as discussed, they are not in and of themselves determinative[5] and the court failed to consider extremely relevant undisputed evidence, including the parties' close personal ties from June 28, 1969, through February 1983. They saw each other regularly, their economic relationship remained unchanged and they acquired real property together. Victor continued to receive mail at Doris's residence and on various forms he indicated he resided at her home. Doris remained a corporate officer in the family business and signed, at Victor's request, all documents presented to her in connection with this business. Bank documents executed in 1982 indicated they were married and not separated and all of their property was community.[6]

The court failed to consider other significant evidence indicating Victor's intentions. He testified he did not make a decision to end his marriage until between early 1982 and early 1983. In his February 16, 1983, declaration in support of his motion to bifurcate, he stated it was his desire to "restructure his own life and enable Petitioner to do the same" and he wished a dissolution of marriage at that time "so that all parties *may begin* to develop as soon as possible a new life . . . ." Moreover, Victor never disclosed to any person, including Doris, that he intended to end the marriage by divorce until January of 1983 and he sent her many cards in which he wrote: "Love," "All my love," "Your loving husband," "I'll straighten out some day," and "You deserve lots of sympathy for putting up with me."

The court also failed to make findings on significant disputed facts, including the extent of their social relationship. Doris continued to appear at various business functions from 1969 to 1983 including picnics and the

---

[5](Maintenance of separate residences is not necessarily indicative of separation [*Kerr* v. *Kerr, supra*, 182 Cal.App.2d 12, 18; *In re Marriage of Baragry, supra*, 73 Cal.App.3d 444, 447-449; and *Makeig* v. *United Security Bk. & T. Co., supra*, 112 Cal.App. 138, 143-144]. Neither the absence of a sexual relationship [*In re Marriage of Baragry, supra*, 73 Cal.App.3d at pp. 447-449] nor the filing of a dissolution petition nor the recitations therein of an earlier date of separation [*In re Marriage of Umphrey, supra*, 218 Cal.App.3d 647, 657], nor dating or cohabiting with another party [*In re Marriage of Baragry, supra*, 73 Cal.App.3d at pp. 447-449], are per se conclusive.)

[6]The parties disagree as to *when* these cards were sent but we note that at least one of those cards was printed in 1974.

annual Christmas party. She contended she was a hostess at such events. "[Victor's] son, Dennis Hardin, testified that while [Doris] mingled with and greeted employees she was not designated in any official capacity as a hostess or greeter. [Doris] sent Christmas cards to the employees from she [*sic*] and [Victor] on an annual basis through 1982."

The judgment is reversed and the matter is remanded for a new trial to determine the date of separation guided by the principles set forth in this opinion. Doris shall recover her costs on appeal.

Wallin, J., and Rylaarsdam, J., concurred.