Filed 5/5/15  Marriage of Pearl and Gerber CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of MICHAEL PEARL and JENEE GERBER. | |
| | D065904 |
| MICHAEL PEARL, | |
| Appellant, | (Super. Ct. No. D528262) |
| v. | |
| JENEE GERBER, | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Michael S. Groch, Judge.  Affirmed in part; reversed and remanded in part with directions.

Elaine L. Heine for Appellant.

John F. Hector for Respondent.

I.

INTRODUCTION

In this marital dissolution action between Michael Pearl and Jenee Gerber, Pearl appeals from an order modifying spousal support entered after a judgment of legal separation. He essentially contends that the trial court erred in finding that the parties' date of separation, for purposes of considering the length of the marriage as a factor in calculating spousal support, occurred after the date of entry of the judgment of legal separation. We conclude that the judgment of legal separation conclusively establishes the date of separation. Accordingly, we reverse and direct the court to recalculate spousal support based on the date of separation being the date of entry of the judgment of legal separation.

II.

FACTUAL AND PROCEDURAL BACKGROUND[1]

Pearl and Gerber were married on August 31, 2010. Gerber had a minor daughter and was employed as an apartment manager when Pearl asked her to marry him. Pearl testified that at the time they decided to get married, he thought that the marriage "was a

---

[1]  The parties did not support their statements of facts and procedure in their briefs with citations to the record, as required by California Rules of Court, rule 8.204(1)(C) and (2)(C). Our statement of facts and procedure is based on our independent review of the clerk's transcript and the parties' testimony at the evidentiary hearing on Pearl's request for an order (RFO) to modify support, and on facts that are undisputed in the parties' briefs.

really good fit for both of us."  He explained that although he and Gerber "weren't particularly in an emotional state for any kind of regular relationship [because Gerber] had recently gone through . . . another engagement . . . and [it was two years] after [he had lost his] second wife," he "was interested in the household concept" and wanted to live with Gerber "as a family."  He suggested that they live together while she went to school and tried to find a new career.  When they set the date for the wedding, Gerber quit her job. She moved into an apartment with Pearl in September 2010.

In October 2010, Pearl moved out of the apartment he shared with Gerber because he realized that he and Gerber were not going to be able to live together.  He testified that Gerber had locked him out of the apartment and made it clear that she did not want him to be there any longer.  However, he still wanted to stay married to her.  At the hearing on his RFO to modify support, Pearl testified that he still loved Gerber and wanted to remain married to her.

In March 2011, Pearl filed and served on Gerber a petition for legal separation.[2]  The court entered a default judgment of legal separation on February 7, 2012 and mailed notice of entry of the judgment to both parties that day.  The judgment provided that Pearl would continue to provide health insurance for Gerber and her daughter through his employer, and that he would pay Gerber spousal support in the amount of $1,250 per month.  The judgment did not specify an end date for the support payments.

---

[2]     Gerber's respondent's brief states that "she was presented with the petition for separation by [Pearl] . . . ."  An e-mail from Gerber to her attorney dated December 28, 2011 shows that she was having her attorney review "the legal separation paperwork."

Gerber moved back in with Pearl in September 2012. However, she decided to end the marriage in April 2013 and informed Pearl of her decision that month. She testified that she asked for a divorce on May 2, 2013 and that Pearl began moving his belongings out of the marital residence on May 4.[3]

Pearl filed an RFO to modify support in June 2013. He asked the court to end his support obligation after his December 1, 2013 payment. Gerber filed a responsive declaration to Pearl's RFO in which she asked the court to order Pearl to pay her $3,500 per month as temporary spousal support. The court held an evidentiary hearing on September 30, 2013 and heard testimony from both Pearl and Gerber.

Pearl testified that he still loved Gerber and expected that he and Gerber would "remain married with independent households." He accepted that they could remain married and not live in the same household, stating, "That's a wonderful thing about the legal separation as I've encountered in California is that it doesn't come with a time limit." When asked if it was his intent to remain married to Gerber "up until today," he responded, "What do you mean up until today? It is still my intent to remain married. I filed for no dissolution. To my knowledge, Ms. Gerber has not either." He further testified that he was "willing to continue to support [her] for a couple of more years to basically finish the work of the last three, so it is not a complete loss. So that she is

---

[3]     In his opening brief, Pearl states that in May 2013, he "filed a move out order request with the court. The parties stipulated that [Gerber] would move out of the residence." In her respondent's brief, Gerber states that "[t]he parties remained living together until July, 2013, three months after [Gerber] informed [Pearl] that the marriage was over."

actually able to take this career that she's discovered and is actually pretty good at and turn it into a sustainable business that she can use to support herself and support her daughter."[4]

In its oral ruling at the hearing, the court cited *In re Marriage of Hardin* (1995) 38 Cal.App.4th 448 (*Hardin*) for the rule that "[s]eparation occurs only when the parties have come to a parting of the ways with no present intention to resume their marriage, and their conduct evidences a complete and final break of the marital relationship." (*Id.* at p. 451.) The court noted that the applicable burden of proof as to the date of separation is preponderance of the evidence and continued, "Spouses cannot be separated unless at least one spouse entertains the subjective intent to end the marriage, and there is objective evidence of conduct furthering that intent. [¶] The testimony of both parties was that neither intended to end the marriage at least until April of 2013. Unusual as the set of facts is, I don't see a legal separation because I don't see a lack of intention to remain married coinciding with objective evidence furthering that intent, which would mean that the moneys paid to date, at least until April 2013, are not spousal support and that the marriage continued from the date of marriage until at least that date when testimony of [Gerber] was that she had the intention to end the marriage, and there is objective

---

4 Gerber testified that Pearl helped her start a business called Circus Home Parties. Pearl testified: "[Gerber] has been developing herself in circus performing arts and started with a pretty good business idea of trying to do work and deliver a circus program for kids' birthday parties and things like that. Teamed up with an operating circus school in the area and has now actually been doing very well teaching . . . classes for young kids, teaching them circus arts."

evidence of conduct furthering that intent. [¶] So I am looking at Mr. Pearl's request to modify spousal support. It appears we are now looking at a marriage that began in August of 2010 and continued until approximately April of 2013."

Approximately two weeks after the evidentiary hearing, the trial court held a hearing on the issue of whether it should follow statutory guidelines in calculating spousal support. Pearl's counsel argued that the judgment of legal separation was "res judicata as to the issues of property division and permanent spousal support," and was "a legitimate judgment that now can't be reversed and a temporary support award be made."

The court found that the judgment of legal separation was "not definitive in this case." The court explained, " . . . I understand that 99 percent of the time entering a judgment of separation is that date [of separation] that we use. But this marriage was not like the 99.9 percent of the other ones that we see. [¶] So I find, based on the testimony and unusual circumstances, the parties continued their marriage almost exactly the same as it was before and after the date of judgment. . . . [Pearl] never intended to separate. He always intended to remain married, hoped that it would become more of a traditional marriage. Still loves her to this day. And still wants to pay support, according to his testimony. But he wanted it in his control rather than in a court's control. [¶] Based on those unusual facts testified to at the hearing, I find that this marriage was two years, eight months long." At the conclusion of the hearing, Pearl's counsel asked the court for leave to file a petition for nullity of marriage. Gerber's counsel stipulated to the filing of the petition.

6

The court entered a written order after hearing in March 2014. The court found the "marriage was two years, eight months long," and, based in part on the court's finding as to the length of the marriage, ordered Pearl to pay Gerber "spousal support in the total amount of $2,750 per month for a total of 16 months with the last payment due on August 2, 2014." The court made the support order retroactive to May 1, 2013. The court reserved jurisdiction over the issue of attorney fees and granted Pearl "leave to file the Amended Petition for Nullity of Marriage."

III.

DISCUSSION

Pearl contends that the judgment of legal separation "is afforded res judicata." He argues that the court abused its discretion in calculating spousal support based on a marriage of two years eight months because the parties were legally separated for 22 months of that period.[5] "As a general rule, we review spousal support orders under the deferential abuse of discretion standard. [Citation.] We examine the challenged order for legal and factual support." (*In re Marriage of Blazer* (2009) 176 Cal.App.4th 1438, 1443.)

We conclude that the judgment of legal separation is res judicata on the issue of the date of separation, and that the court therefore lacked discretion to calculate spousal

[5]    The time period between entry of the judgment of legal separation on February 7, 2012 and the date of separation that the court found, May 1, 2013, is approximately 14 and one-half months. However, Pearl alleged in his RFO and argued at the hearing that the length of the marriage was only six weeks—i.e., that the date of separation was in October 2010.

support based on a finding that the date of separation occurred sometime after entry of the judgment.

"[A] judgment of legal separation (formerly a decree of separate maintenance) is designed to resolve the financial issues between the parties, including division of community assets and liabilities and *determination of support obligations*. [Citations.] A judgment for legal separation, however, is not an interim order. It serves as a final adjudication of the parties' property rights and is conclusive and res judicata even in a subsequent proceeding to dissolve the marriage." (*Estate of Lahey* (1999) 76 Cal.App.4th 1056, 1059, italics added; *Faught v. Faught* (1973) 30 Cal.App.3d 875, 878 ["[A] decree of separate maintenance . . . operates as a final adjudication of such financial aspects of the matrimonial relationship as spousal support, division of community property, and settlement of property rights, and to the extent the decree deals with such matters it is conclusive"].)

Our research has revealed no case in which a trial court found that the date of separation in a marriage occurred after entry of a judgment of legal separation or a decree of separate maintenance. Statutes that address the characterization of property after the court has entered a judgment of legal separation support the view that the date of entry of judgment conclusively establishes the date of separation. Family Code[6] section 772 provides that "[a]fter entry of judgment of legal separation of the parties, the earnings or

_____

6    All subsequent statutory references are to the Family Code unless otherwise specified.

8

accumulations of each party are the separate property of the party acquiring the earnings or accumulations."  Section 2624 provides that "[d]ebts incurred by either spouse . . . after entry of a judgment of legal separation of the parties shall be confirmed without offset to the spouse who incurred the debt."  These statutes reflect a legislative intent that a judgment of legal separation conclusively establishes the date of separation—i.e., the date that the marital community, if not the actual marriage, ends.[7] Although the court may modify a support order contained in a judgment of legal separation based on changed circumstances (*Monroe v. Superior Court* (1946) 28 Cal.2d 427, 429), in considering the duration of the marriage as a factor in determining the amount of support or the period for which support is awarded, the court may not deem the date of separation to have occurred later than the date of entry of a judgment of legal separation.  The court in the present case erred by calculating spousal support based on its finding that the parties' marriage continued after entry of the judgment of legal separation in February 2012 until Gerber decided that the marriage was over at the end of April 2013.

Gerber contends that the judgment of legal separation has no res judicata effect because she had no opportunity to present evidence regarding the parties' actual date of

_____

[7]     As stated in  Hogoboom & King, California Practice Guide: Family Law (The Rutter Group 2014) paragraph 2:26, pages 2-9 to 2-10, "[a] judgment of legal separation leaves the marriage bonds intact.  In effect, however, the parties remain 'married' in name only, without the concomitant rights and responsibilities that attach to marital status.  They cannot enter into a new marriage unless and until the existing marriage is dissolved by death or judgment of dissolution; but the judgment finally adjudicates the financial issues between the parties, including determination of their support obligations . . . ."

separation prior to September 2013, when she filed her opposition to Pearl's RFO seeking modification of spousal support.  She relies on *Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131 (*Rubenstein*) and section 2120, which the *Rubenstein* court referred to as creating an exception to res judicata in " 'recognition that "[t]he public policy of assuring finality of judgments must be balanced against the public interest in ensuring proper division of marital property, in ensuring sufficient support awards, and in deterring misconduct." ' " (*Rubenstein, supra,* at p. 1144, quoting section 2120, subd. (c).)[8]

 *Rubenstein* is inapposite.  The plaintiff in *Rubenstein* filed a civil action against her former husband seeking to set aside the parties' judgment of marital dissolution on the grounds of fraud and perjury, and to recover damages.  (*Rubenstein, supra,* 81

---

[8] Section 2120 consists entirely of the Legislature's articulation of public policy as follows:  "The Legislature finds and declares the following: [¶] (a) The State of California has a strong policy of ensuring the division of community and finds and declares the following: [¶] (a) The State of California has a strong policy of ensuring the division of community and quasi-community property in the dissolution of a marriage . . . , and of providing for fair and sufficient child and spousal support awards. These policy goals can only be implemented with full disclosure of community, quasi-community, and separate assets, liabilities, income, and expenses . . . , and decisions freely and knowingly made. [¶] (b) It occasionally happens that the division of property or the award of support, whether made as a result of agreement or trial, is inequitable when made due to the nondisclosure or other misconduct of one of the parties. [¶] (c) The public policy of assuring finality of judgments must be balanced against the public interest in ensuring proper division of marital property, in ensuring sufficient support awards, and in deterring misconduct. [¶] (d) The law governing the circumstances under which a judgment can be set aside, after the time for relief under Section 473 of the Code of Civil Procedure has passed, has been the subject of considerable confusion which has led to increased litigation and unpredictable and inconsistent decisions at the trial and appellate levels."

Cal.App.4th at p. 1136.) In the marital dissolution proceedings, the wife had claimed that the husband possessed ownership rights to the music of Jimi Hendrix and George Clinton, and that he had committed perjury by concealing from the court those assets and the income that he had received from them. (*Id.* at p. 1137.) At trial, the family court found that there were no community assets subject to the court's disposition. The court later made the same finding when it denied the wife's motion to vacate the judgment and for a new trial on the grounds that the husband had given false testimony and that she had newly discovered evidence of community property. (*Ibid.*)

Several years after the wife unsuccessfully appealed from the family court rulings, she filed a civil action to vacate the dissolution judgment based on her recent discovery that the husband had admitted in a federal lawsuit that he owned the copyrights and other property rights to all sound recordings of Jimi Hendrix that he had produced and engineered. (*Rubenstein, supra,* 81 Cal.App.4th at p. 1137-1139.) The trial court granted the husband's motion for summary judgment on the grounds the action was barred by the statute of limitations and by res judicata, and the *Rubenstein* court reversed the summary judgment. (*Id.* at pp. 1140, 1152.)

In rejecting the husband's argument that the action was barred by res judicata, the *Rubenstein* court noted that the doctrine of res judicata is based on the sound policy of preventing a party who has had a fair adversary hearing on an issue from relitigating the issue and subjecting the other party to the expense of relitigation. (*Rubenstein, supra,* 81 Cal.App.4th at p. 1144.) The court concluded that "[s]ection 2120 et seq. authorizes a

11

dissolution judgment to be vacated, irrespective of res judicata concerns, where the judgment was procured by fraud or perjury.  In such cases, the interest in assuring finality of judgments is outweighed by other considerations.  (§ 2120, subd. (c).)  A spouse who conceals the existence of community assets, thereby depriving the other spouse of the opportunity fully to present his or her case in a dissolution proceeding, cannot claim the judgment of dissolution is conclusive and immune from subsequent attack."  (*Rubenstein, supra,* at p. 1152.)

*Rubenstein* and section 2120 support the principle that the doctrine of res judicata does not bar a subsequent action to relitigate an issue concerning the division of a marital estate where one of the parties did not have a full and fair opportunity to litigate the issue because the other party hid assets subject to division or committed perjury or other misconduct regarding the assets in question.  The present case does not involve division of the marital estate,[9] and, in any event, there is no is no showing or claim that Pearl procured the judgment of legal separation by fraud, perjury, or other misconduct that deprived Gerber of the opportunity to oppose entry of the judgment and litigate the issue of the date of separation.[10]  The record shows that Gerber asked her counsel to review

---

[9]     The judgment of legal separation includes the following statement:  "The court finds there are no community assets, debts, or retirement benefits to be divided."

[10]     Section 2345 provides that "[t]he court may not render a judgment of the legal separation of the parties without the consent of both parties unless one party has not made a general appearance and the petition is one for legal separation."  In other words, there

12

the "legal separation paperwork" before the judgment was entered, and Gerber took no action to set aside the judgment after she received notice of its entry in February 2012. The public policy exception to res judicata that the *Rubenstein* court applied does not apply in this case.

The judgment of legal separation operates as a final adjudication of spousal support, subject to modification on a showing of changed circumstances. (*Monroe v. Superior Court, supra,* 28 Cal.2d at p. 429.) In exercising its discretion to decide whether to modify a support order based on a material change of circumstances, the trial court is required to consider the same criteria that it considers in making an initial support order, including duration of the marriage, as set forth in section 4320. (*In re Marriage of Stephenson* (1995) 39 Cal.App.4th 71, 77-78; *In re Marriage of Terry* (2000) 80 Cal.App.4th 921, 928.) For purposes of determining spousal support rights, the duration of the marriage is limited to the period between the date of marriage and the date of separation. (*In re Marriage of Hebbring* (1989) 207 Cal.App.3d 1260, 1265, fn. 3.) Although substantial evidence supports the court's finding that under the test articulated in *In re Marriage of Hardin, supra,* 38 Cal.App.4th 448, the parties' date of separation was on or about May 1, 2013, the court was bound by the judgment of legal separation to deem the date of separation to be no later than February 7, 2012, the date of entry of the

---

can be no entry of a judgment of legal separation unless both parties agree to it or it is obtained by default, as happened in this case.

13

judgment of legal separation.  We remand the matter for the trial court to redetermine the issue of spousal support accordingly.

## IV.

## DISPOSITION

The portions of the March 17, 2014 order finding that the length of the parties' marriage was two years eight months and awarding spousal support are reversed.  The matter is remanded and the court is directed to redetermine spousal based on the parties' date of separation being no later than the date of entry of the judgment of legal separation.  In all other respects, the order is affirmed.  Pearl is awarded his costs on appeal.


_____
AARON, J.

WE CONCUR:


_____
McCONNELL, P. J.


_____
McINTYRE, J.


14