Filed 10/30/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of SHOU CHAN LEE and SHU YING LIN. | H045428 (Santa Clara County Super. Ct. No. 6-14-FL-013138) |
| SHOU CHAN LEE, <br><br> Respondent, <br><br> v. <br><br> SHU YING LIN, <br><br> Appellant. | |

In this marital dissolution action, appellant challenges the trial court's determination that the parties legally separated in May 2012 when respondent moved out of the family residence. Finding no error, we will affirm.

## I.        BACKGROUND

After 26 years of marriage, Shou Chan (Tony) Lee (Husband) moved out of the family residence in May 2012. He rented an apartment in a neighboring city, and occasionally interacted with Shu Ying (Sharon) Lin (Wife) with whom he maintained an amicable relationship. Husband filed a dissolution petition in August 2014.

The parties litigated their date of separation. Husband maintained the date was in May 2012 when he left the family home, and Wife contended the legal separation occurred when Husband filed for dissolution 27 months later. After a two-day hearing in 2017 in which both parties testified, the court found that legal separation occurred when Husband moved from the family home in May 2012. Ruling from the bench and tracking

the language of Family Code section 70 defining "date of separation," the court found "Husband's intention to end the marriage occurred on May 21, 2012 and his actions since then have been consistent with that." The court found Husband's intent to end the marriage was clearly expressed by leasing an apartment, his intent was reinforced by relinquishing the key to the family home and refusing to give Wife a key to the apartment, and his post-move conduct was consistent with that intent. The court found the parties' limited interactions after Husband's move did not show an intent to reconcile and did not "overcome any clear act of ending the marriage by moving out."

The trial court memorialized its ruling about the date of separation in a written order. It certified the order for immediate review, and this court granted Wife's motion to appeal the interlocutory decision. (Cal. Rules of Court, rule 5.392.)

## II. DISCUSSION

Family Code section 771 classifies property acquired after the date of separation as the acquiring spouse's separate property. (Undesignated statutory references are to the Family Code.) As originally enacted, section 771 provided that "[t]he earnings and accumulations of a spouse … , while living separate and apart from the other spouse, are the separate property of the spouse." (§ 771, former subd. (a).) In 2016 the Legislature substituted the clause "after the date of separation of the spouses" for the clause "while living separate and apart from the other spouse." (§ 771, subd. (a).) At the same time, the Legislature defined "date of separation" in a new section of the Family Code: " 'Date of separation' means the date that a complete and final break in the marital relationship has occurred, as evidenced by both of the following: [¶] (1) The spouse has expressed to the other spouse his or her intent to end the marriage. [¶] (2) The conduct of the spouse is consistent with his or her intent to end the marriage." (§ 70, subd. (a).) In enacting section 70, the Legislature expressly abrogated the holding in *In re Marriage of Davis* (2015) 61 Cal.4th 846 that "the Legislature intended the statutory phrase 'living separate

2

and apart' to require both separate residences and accompanying demonstrated intent to end the marital relationship." (*Id.* at pp. 863–864; § 70, subd. (c).).[1]

The "date of separation" definition added by section 70 is consistent with caselaw interpreting and applying former section 771. In *In re Marriage of von der Nuell* (1994) 23 Cal.App.4th 730, the court explained that a separation under section 771 "requires not only a parting of the ways with no present intention of resuming marital relations, but also, more importantly, conduct evidencing a complete and final break in the marital relationship." (*In re Marriage of von der Nuell*, at p. 736, italics omitted.) In *In re Marriage of Hardin* (1995) 38 Cal.App.4th 448, the court elaborated that marital separation for purposes of section 771 requires both the subjective intent to end the marriage and objective conduct demonstrating such intent. (*In re Marriage of Hardin*, at p. 451.) In *In re Marriage of Manfer* (2006) 144 Cal.App.4th 925, 930, the court instructed that the parties' individual intents are objectively determined from all relevant evidence before the court. " 'The ultimate question to be decided in determining the date of separation is whether either or both of the parties perceived the rift in their relationship as final. The best evidence of this is their words and actions.' " (*Ibid.*, quoting *In re Marriage of Hardin*, at p. 453, italics omitted; see also § 70, subd. (b) ["In determining the date of separation, the court shall take into consideration all relevant evidence"].)

The date of separation is a factual issue established by a preponderance of the evidence. We review the trial court's determination for substantial evidence (*In re Marriage of Manfer*, *supra*, 144 Cal.App.4th at p. 930), indulging all legitimate and reasonable inferences to uphold the court's decision. (*Munoz v. Olin* (1979)

---

[1] Section 4, subdivision (c) provides that changes to the Family Code apply "to all matters governed by the new law," regardless of whether proceedings were commenced before the new law was enacted. An exception to the retroactive application of a change to the Family Code exists "[i]f a party shows, and the court determines, that application … of the new law … would substantially interfere with the effective conduct of the proceeding or the rights of the parties." (§ 4, subd. (h).) Neither party here sought exception to the retroactive application of section 70.

24 Cal.3d 629, 635–636; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)  To the extent we must interpret Family Code section 70, we apply our independent judgment.  (*In re Marriage of Schleich* (2017) 8 Cal.App.5th 267, 276.)

## A.  SUBSTANTIAL EVIDENCE SUPPORTS THE MAY 2012 SEPARATION DATE

Wife likens this case to those in which one spouse's move from the family residence was not found to signify a legal separation.  But they all involved far more ongoing engagement after the move.  The spouses maintained the habits and appearance of a married couple in *In re Marriage of Baragry* (1977) 73 Cal.App.3d 444, where the husband ate at home frequently, traveled with the wife, took the wife to social functions and sporting events, sent her cards and gifts including flowers on their anniversary, and relied on the wife to do his laundry.  (*Id.* at p. 447.)  In *In re Marriage of von der Nuell*, *supra*, 23 Cal.App.4th 730, the spouses attempted reconciliation, vacationed and socialized together, continued sexual relations, and the husband sent the wife cards and gifts on special occasions and holidays.  (*Id.* at p. 736.)  In *In re Marriage of Hardin*, *supra*, 38 Cal.App.4th 448, the spouses saw each other regularly during the 14 years they lived apart.  (*Id.* at p. 454.)  Their economic relationship remained unchanged, they acquired real property together, worked together in a family business, and the husband stated he had not decided to end the marriage until shortly before he filed for dissolution.  (*Ibid.*)

In contrast here, Wife acknowledged the marriage had been "going down slowly, slowly during the years," and "divorce conversation had been going on for years."  Between 2010 and 2012 she and Husband fought a lot about money-related issues, and Husband moved out of the family home days after they argued about money.  Husband testified that the marriage had been platonic for years, he stayed in the marriage for their children, he wanted to separate when the children went to college, but Wife told him she was not ready.  In his mind there was "a true declaration of separation" in 2010 when Wife insisted Husband not attend her father's funeral.  Wife had transferred substantial

4

sums of Husband's earnings from a joint account to her separate account, and Husband reacted by depositing his earnings in his separate account. In May 2012 Wife asked Husband to move those funds to their joint account, Husband said he would think about it, and Wife hit him in the chest. An argument ensued, and Husband told Wife he was moving out and ending the relationship. The next day, Husband transferred $280,000 to the joint account to distinguish past community earnings from prospective separate earnings. He signed a one-year lease for an apartment, moved essential possessions from the family home, and he returned to the residence only to retrieve additional possessions. He returned his housekey to Wife and refused to give her a key to the apartment. He did not sleep at the family home after moving, nor did Husband and Wife take vacations or celebrate holidays together. At no time in the 27 months between May 2012 and the filing of the dissolution petition in August 2014 did Husband and Wife attempt to reconcile.

## B.  FAMILY CODE SECTION 70 WAS CORRECTLY APPLIED

Wife contends that the trial court misapplied the law by presuming that Husband's move to an apartment was sufficient to establish the date of separation, and by requiring Wife to rebut that presumption. But no such presumption appears in the trial record. In fact, Husband argued in his trial brief that no presumption applied to either party's proposed separation date, citing *In re Marriage of Peters* (1997) 52 Cal.App.4th 1487 (date of separation is determined by a preponderance of the evidence standard because the parties' economic interests in selecting between two dates are inverse but equal). Husband presented evidence that in May 2012 he expressed his intent to end the marriage and that his conduct while the parties were living apart was consistent with that intent. Wife presented evidence not to rebut any presumption, but for the court to weigh against Husband's evidence in determining whether the May 2012 separation date had been shown by a preponderance of the evidence. The trial court's date of separation finding was based on the evidence presented, not on the application of a presumption.

5

Citing the requirement in section 70 that the intent to end the marriage be communicated to the other party, Wife complains that the trial court did not find Husband had verbally informed her of his intent to end the marriage. The statute requires evidence that "[t]he spouse has expressed to the other spouse his or her intent to end the marriage" and also directs the court to "take into consideration all relevant evidence." (§ 70, subds. (a)(1), (b).) The statute does not require express findings as to a declaration of intent or conforming conduct. In any event, Husband testified that he told Wife the marriage was over when he announced he was moving out, and the trial court found him credible. Husband's testimony, even without an express finding, is evidence that supports the trial court's decision and satisfies the statute.

Wife argues that the trial court mischaracterized the parties' joint attendance at their daughter's college graduation and at a birthday barbeque for their son as undertaken solely for the children's benefit, and mischaracterized interactions such as two shared meals and exchanging holiday wishes merely as acts "honoring … the shared experience of the long-term marriage," rather than attempts to reconcile. She asserts that by doing so the court failed to consider all relevant evidence. She argues that their activities after Husband moved out were no different than their activities before his move, because for many years they had led separate lives and maintained their relationship only for the children.

We have reviewed the record and find no mischaracterization or failure to consider evidence. The marital relationship before May 2012 involved more than Husband and Wife coming together to celebrate a child's graduation or birthday, and occasionally exchanging greetings via e-mail. Before leasing an apartment, Husband slept at the family home in a bed he shared with Wife, and he interacted with Wife largely on a daily basis. He often ate dinner with her on Fridays, and they vacationed, celebrated family occasions, and spent holidays together. After he moved to the apartment he returned to the family home only to retrieve possessions and prepare tax returns. After May 2012,

6

Husband and Wife did not celebrate birthdays or holidays together, vacation together, or meaningfully interact other than to file tax returns and discuss the children and the division of their assets. Husband and Wife visited with their children separately, and traveled separately to their daughter's college graduation. We find no error in the trial court's consideration of the evidence or application of the law.

**III.      DISPOSITION**

The order after trial re date of separation is affirmed. Respondent is awarded costs on appeal.

7

_____

Grover, J.

**WE CONCUR:**

_____

Elia, Acting P. J.

_____

Mihara, J.

**H045428 -** *Lee v. Lin*

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 6-14-FL-013138 |
| Trial Judge: | Hon. Beth A. R. McGowen |
| Counsel for Appellant Shu Ying Lin | Kathleen O'Reilly<br>O'Reilly Law Office |
| Counsel for Respondent Shou Chan Lee | Michael Thomas Bonetto<br>Crystal Riggins<br>Hoge, Fenton, Jones & Appel, Inc. |