Filed 9/29/21  Marriage of Khan CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re the Marriage of RIAZMIN and RIYAZ AHMED KHAN. | C092085 |
| RIAZMIN KHAN, Respondent, v. RIYAZ AHMED KHAN, Appellant. | (Super. Ct. No. STAFLDWC20180001201) |

Riyaz Ahmed Khan (Appellant) appeals from a trial court "judgment on submitted issues," wherein the trial court resolved numerous issues related to dissolution of the marriage between Appellant and Riazmin Khan (Respondent).  On appeal, Appellant contends the trial court erred in finding the parties' date of separation to be in February 2017, and in rejecting an interspousal transfer deed transferring the marital community's

1

interest in real property to Appellant as his sole and separate property. We find substantial evidence in the record to support both of these decisions.

Appellant also contends the trial court abused its discretion by failing to "condemn racism in the legal system." The record does not support Appellant's claim. We will affirm the judgment of the court.

## I. BACKGROUND

The parties were married on September 22, 2005. In 2017, Respondent filed a marital dissolution petition alleging the date of their separation was February 12, 2017. Appellant alleged their date of separation was several months later, in December 2017. The parties litigated this issue at trial.

*A.    Trial*

At trial, Respondent testified that on February 12, 2017, Appellant told her to get out of the family home, it did not belong to her. She did not leave because she could not afford to; however, she did move into a bedroom separate from Appellant. Several months later, on June 3, 2017, Appellant tried to come into Respondent's bedroom. She refused to let him in. He accused Respondent of being unfaithful to him and threatened to shoot her if she did not "tell him the truth." He then sexually assaulted her. The next day, as Respondent was trying to leave for their child's soccer tournament, Appellant said to their child that Respondent was a "bitch." He told the child that he no longer wanted her to play soccer and he wanted the child to burn her soccer cleats. Respondent said she would drive the child to the soccer tournament. In response, Appellant got a sledgehammer and smashed the windshield on Respondent's car.

Appellant was subsequently arrested and in September 2017, he was convicted of willful infliction of corporal injury on a spouse (Pen. Code, § 273.5, subd. (a)). He was sentenced to five years felony probation. Respondent also obtained an emergency protective order, protecting her and the parties' child from Appellant.

Respondent continued to live in the family home until December 2017 because she did not have enough money to leave. During that time, however, she and Appellant lived in separate bedrooms and had no consensual sexual contact. During that time, they also went to a family wedding together (along with their child and Respondent's mother) and attended their child's soccer events together. Respondent's intent to leave the marriage, however, did not wane, and she believed her conduct reflected that intent.

While still living in the family home, Respondent had no access to money. Respondent's paychecks were deposited directly into the parties' joint account and Appellant would immediately move the money to another account. If Respondent needed to buy anything, Appellant would give her cash or he would go with her and pay for the purchase himself. Respondent never took money out of their joint accounts, she believed Appellant would "hit" her if she did. Respondent, who during the marriage had earned a degree in business administration, also was not permitted to ask questions about the parties' finances. Respondent thus had to terminate the direct deposit function on her paycheck and borrow money from friends in order to acquire enough money to leave. By December 2017, Respondent had accumulated enough money to move out, she took her mom and the parties' child with her.

Characterization of the family home as community or separate property was also an issue at trial. The family home was purchased in 2010, though Respondent was not present for the transaction. The deed to the house, dated April 27, 2010, indicated Appellant took title to the home as "a married man as his sole and separate property." Respondent had not seen the April 27, 2010, deed until it was produced during the discovery period prior to trial.

On the issue of the family home, there was also an interspousal transfer deed executed by Respondent on May 25, 2010, and notarized by a notary public. Respondent remembered Appellant taking her to sign a document, but she did not remember that this was the document she signed. She did remember asking Appellant, in Hindi, what she

3

was signing and he told her, " 'You as a wife, have full rights to the house.' " He did not tell her that by signing this document, legally, the house would be his and his alone. Appellant, on the other hand, testified that when he bought the family residence, he "offered her to be part of the property" but she "declined it."

B.    *Judgment*

Following trial, the court issued a lengthy written "Judgment on Submitted Issues." The court ruled the parties' date of separation was "February [1]2, 2017."[1] In support of its ruling, the court found that in February 2017, Respondent moved out of the parties' bedroom and the parties began living "separate lives." The court noted the parties attended "one or two family weddings" with their child but "they did not do anything to hold themselves out as a married couple, did not attempt to reconcile, did not attend counseling, and did not share a bedroom."

The court also found that Respondent had no experience with real property and Appellant was solely responsible for the parties' finances. Respondent did not understand that by signing the interspousal transfer deed, she was transferring her interest in the family home to Appellant; this was never explained to her. The court determined there was "no doubt" that when Respondent signed the interspousal transfer deed, "she did not do so with full knowledge of her rights."

The court noted the family home was purchased with community property, and there was no claim that separate property contributions were made. Appellant "provided no testimony to support a legal finding that the house is separate property." Thus, the court concluded, the family home was the community property of the parties.

---

[1] The judgment includes a clerical error identifying the date of separation as February 2, 2017, rather than February 12, 2017.

4

## II. DISCUSSION

### A.    *Date of Separation*

Appellant contends the trial court "abused its discretion" in finding February 2017, to be the parties' date of separation. He argues the weight of the evidence established that they continued to hold themselves out as a married couple until December 2017. We disagree.

#### 1.    *Legal Principles*

Spouses are legally separated if (1) at least one spouse entertains the subjective intent to finally end the marriage, and (2) there is objective evidence of conduct demonstrating that intent. (Fam. Code, § 70; *In re Marriage of Manfer* (2006) 144 Cal.App.4th 925, 930.) "Simply stated, the date of separation occurs when either of the parties *does not* intend to resume the marriage *and* [their] actions bespeak the finality of the marital relationship." (*In re Marriage of Hardin* (1995) 38 Cal.App.4th 448, 451.) Living in separate residences is no longer an indispensable prerequisite to establish the date of separation. (Fam. Code, § 70, subd. (c).)

We review a trial court's decision on the parties' date of separation for substantial evidence, indulging all legitimate and reasonable inferences to uphold the trial court's decision. (*In re Marriage of Lee & Lin* (2019) 41 Cal.App.5th 698, 702.)

#### 2.    *Analysis*

Between February 2017 and December 2017, the parties' ceased to maintain the habits and appearance of a married couple. (See *In re Marriage of Lee & Lin, supra*, 41 Cal.App.5th at p. 702.) In February 2017, Appellant told Respondent to get out of the family home. Lacking the resources to leave, Respondent moved into a separate bedroom, where she remained until December 2017, when she marshalled the resources to move into her own place, and the parties never again had consensual sexual contact. (See *In re Marriage of von der Nuell* (1994) 23 Cal.App.4th 730, 737.)

Additionally, other than a family wedding or two, which they attended with their child and Respondent's mother, Appellant and Respondent did not attend social functions together. (See *In re Marriage of Baragry* (1977) 73 Cal.App.3d 444, 447.) There also was no evidence they vacationed together, went on a date, or participated in counseling in an effort to reconcile after February 2017. (*Ibid.*)

This was not, as Appellant suggests, a couple that was simply having a rough patch. From February until December 2017, Respondent's intent to leave the marriage never faltered. Thus, on this record, we find the evidence sufficient to sustain the trial court's finding that the parties' date of separation was in February 2017.

B.      *The Family Residence*

Appellant further contends the trial court abused its discretion in finding the family residence to be community property. We disagree.

1.      *Legal Principles*

"Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property." (Fam. Code, § 760.)

"A rebuttable presumption of undue influence arises when one spouse obtains an advantage over another in an interspousal property transaction." (*In re Marriage of Mathews* (2005) 133 Cal.App.4th 624, 630; see *In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 297 (*Haines*); Fam. Code, § 721.) "The presumption of undue influence is regularly applied in marital transactions in which one spouse has deeded property to the other, as in *Haines*. In such cases, it is evident one spouse has obtained an advantage—the deeded property—from the other." (*In re Marriage of Burkle* (2006) 139 Cal.App.4th 712, 730.)

" ' "When a presumption of undue influence applies to a transaction, the spouse who was advantaged by the transaction must establish that the disadvantaged spouse's action "was freely and voluntarily made, with a full knowledge of all the facts, and with a

6

complete understanding of the effect of' the transaction." [Citation.]' (*In re Marriage of Lund* (2009) 174 Cal.App.4th 40, 55.)  The advantaged spouse must show, by a preponderance of evidence, that his or her advantage was not gained in violation of the fiduciary relationship.  (*Haines, supra*, 33 Cal.App.4th at p. 296.)  ' "The question 'whether the spouse gaining an advantage has overcome the presumption of undue influence is a question for the trier of fact, whose decision will not be reversed on appeal if supported by substantial evidence.' "  [Citation.]'  (*Lund*, at p. 55.)"  (*In re Marriage of Fossum* (2011) 192 Cal.App.4th 336, 344.)

  2. *Analysis*

  There can be no doubt that Appellant was advantaged by Respondent signing an interspousal transfer deed, transferring her interest in the family home to Appellant.  It was, therefore, Appellant's burden at trial to overcome the presumption that Respondent signed that document as a result of undue influence.  (*Haines, supra*, 33 Cal.App.4th at p. 296.)  There is substantial evidence he failed to overcome that presumption.  (*In re Marriage of Fossum, supra*, 192 Cal.App.4th at p. 344.)

  Appellant controlled the parties' finances, to the point where Respondent feared physical violence if she took money out of their accounts on her own.  Appellant did not permit Respondent to ask questions about their finances.  And, although they were looking for a home together, Appellant ultimately purchased the family home when Respondent was not present.

  Appellant took title to the home as a married man but as his "sole and separate property," but never shared those documents with Respondent.  Appellant subsequently took Respondent to sign an interspousal transfer deed, transferring all her interest in the home to Respondent; she did not understand what she was signing.  And, while Respondent may be smart and educated, that is not, as Appellant suggests, evidence that she understood how an interspousal transfer deed works.  Respondent even asked Appellant, in Hindi, what she was signing.  Rather than be honest with her, Appellant

told Respondent not to worry, that she "had full rights to the house." Obviously, this was not true.

In sum, on this record, we find sufficient evidence that Appellant failed to overcome the presumption of undue influence on Respondent in executing the interspousal transfer deed. As a result, there is sufficient evidence to sustain the trial court's decision to characterize the family home as community property.

C.      *Failure to Condemn Racism*

Appellant contends "the trial court abused its discretion when it failed to condemn racism in the legal system." The record does not support his contention. The comment that Appellant attributes to Respondent's trial counsel was made outside the presence of the court. And, when Appellant's concern was brought to the court's attention, the court addressed the issue directly with counsel, and counsel accepted the court's direction without incident or argument. Thus, there is no evidence on this record, that the court failed to act to preserve the integrity and impartiality of the judicial system. (See *Pinter-Brown v. Regents of Univ. of Cal.* (2020) 48 Cal.App.5th 55, 87.)

## III.  DISPOSITION

The judgment is affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

BLEASE, Acting P. J.

/S/

_____

ROBIE, J.

8